Robert POWERS; Peter Franklin; Sea Breeze Printing, Inc.; Garvin D Stanislawski; Starlog Group, Inc. Defined Pension Plan, on behalf of themselves and all others similarly situated, Plaintiff,

v.

Paul EICHEN; Robert Johnson; Kenneth E. Olson; Frederick Parker; Michael Tamkin; Michael Vogt; Dennis A. Whittler; Mary Zoeller; Arthur Minich; John M. Siber; John Thomas; Jeffrey Nash; and, Proxima Corporation, Defendants.

Civil No. 96–1431 B AJB.

United States District Court, S.D. California.

April 15, 1997.

---

234

Bill Grauer, San Diego, CA, for defendants.

Jan Adler, Sallie Blackman, San Diego, CA, Jennifers Wells, Santa Barbara, CA, for plaintiff.

### Order Granting Defendants' Motion for Protective Order and Motion to Quash

BATTAGLIA, United States Magistrate Judge.

Defendants' Motion for Protective Order and Motion to Quash came on regularly for hearing on April 14, 1997 at 9:00 a.m. before Magistrate Judge Anthony J. Battaglia. Bill Grauer appeared on behalf of all defendants; Jan Adler, Sallie Blackman, and Jennifers Wells appeared on behalf of plaintiff. On behalf of all purchasers of the common stock of Proxima Corporation ("Proxima"), plaintiffs' allege that defendants violated federal securities laws by making false and misleading statements to investors about the development of a new product by Proxima. Defendants' Motion for Protective Order and Motion to Quash is based on the Private Securities Litigation Reform Act of 1995 ("the Reform Act"), which provides for an automatic stay of discovery in private securities lawsuits during the pendency of a motion to dismiss.

In an order filed March 14, 1997, Judge Rudi M. Brewster granted in part and denied in part defendants' Motion to Dismiss and allowed plaintiffs sixty days to amend their complaint. Shortly thereafter, on March 26, 1997, defendants filed a Motion for Reconsideration, a Motion for Certification of Issue for Appeal,[1] and a Motion to Strike (collectively, "Motion for Reconsideration"). The Motion for Reconsideration is set for hearing on May 27, 1997. Defendants' contend that, in order to effectuate the purposes of the Reform Act, discovery in this action should be stayed while their Motion for Reconsideration of Judge Brewster's March 14, 1997 order is pending. By written opposition, plaintiffs oppose any further stay of discovery. Plaintiff further asserts that defendants lack standing to seek a stay of the subpenas that were issued to third parties.[2] Defendants also seek to quash document requests insofar as they relate to parties or portions of the complaint that were dismissed in Judge Brewster's order of March 14, 1997. Plaintiffs have not specifically addressed this issue in their written opposition but have indicated that they do not intend to amend the complaint as allowed by Judge Brewster's March 14, 1997 order.

### Discussion

On March 4, 1997 through March 6, 1997, plaintiffs served a total of eight subpenas duces tecum on nonparties, as well as a request for production of documents to ALL defendants, some of whom are no longer defendants pursuant to Judge Brewster's March 14, 1997 order. These document productions were scheduled to take place between March 24, 1997 and April 21, 1997.

---

1. In their Motion for Reconsideration, defendants have alternatively requested that Judge Brewster certify the March 14, 1997 order for an interlocutory appeal and that Judge Brewster stay discovery pending the outcome of an interlocutory appeal.

2. To support this argument, plaintiff cites *In re Seagate Technology II Securities Litigation*, 1993 WL 293008, 1993 U.S. Dist. LEXIS 18065 (N.D. Cal., June 15, 1993), which was not a Reform Act case.

On March 21, 1997, this Court granted defendants' ex parte application for a temporary stay of discovery pending the outcome of their Motion for Protective Order and Motion to Quash.

Defendants contend that the purposes of the Reform Act would be rendered meaningless if they are not entitled to a stay of discovery until all legal challenges to the complaint at the district and appellate courts have been resolved. Plaintiffs argue that this interpretation would extend the Reform Act beyond the plain language of the statute. It is plaintiffs' position that under the Reform Act defendants were only entitled to the automatic stay until March 3, 1997, when Judge Brewster indicated from the bench after oral argument that he intended to partially deny defendants' Motion to Dismiss. Plaintiffs also generally claim that they will be prejudiced by any further stay of discovery because it would cause an unnecessary delay in the resolution of this litigation and because documents maintained by unidentified third party witnesses may be destroyed absent a subpoena. However, plaintiffs have not cited any particular circumstances or evidence that indicates they will suffer actual prejudice if the Court orders a further stay of discovery.

Title 15, United States Code, section 78u–4(b)(3)(B), provides as follows:

> In any private action arising under this title, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds, upon the motion of any party, that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

■ By its language, the Reform Act addresses "all discovery" with no distinction between that sought from nonparties as opposed to parties. 15 U.S.C. 78u–4(b)(3)(B). As a result, defendants have standing to seek a stay of the subpenas duces tecum that were issued in this case to nonparties.

■ The Reform Act does not specifically state whether a stay is proper while the district court is reconsidering its ruling on a motion to dismiss. Thus, in order to determine whether a stay is proper under these circumstances, this Court must decide whether the term "pendency" in section 21D(b)(3)(B) should be read narrowly to mean that discovery may commence as soon as the district court rules on a motion to dismiss or more broadly to include the district court's reconsideration of a ruling on a motion to dismiss.

"The starting point for interpreting any statute is the plain meaning of the language used by Congress." *Lewis v. McAdam*, 762 F.2d 800, 804 (9th Cir.1985). The court may look to legislative intent for guidance if questions remain after examining the plain language. *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 176–78, 114 S.Ct. 1439, 1448, 128 L.Ed.2d 119 (1994). In this case, the legislative history indicates that the Reform Act was passed to address widespread abuse of the securities laws by overzealous attorneys and investors. Congress found that the federal securities laws are frequently misused by the filing of frivolous suits "alleging violations of the federal securities laws in the hope that defendants will quickly settle to avoid the expense of litigation. These suits, which unnecessarily increase the cost of raising capital and chill corporate disclosure, are often based on nothing more than a company's announcement of bad news, not evidence of fraud." S. Rep. 104–98, 1995 WL 37283 (Leg.Hist.), at 4, U.S.Code Cong. & Admin.News 679, 683. Smaller start-up companies with unpredictable prospects, especially those involved in high technology, are particularly vulnerable. When a number of venture-backed companies less than ten years old was surveyed, it was learned that one in six had been sued at least once and that lawsuits had consumed an average of 1,055 hours of management time and $692,000 in legal fees. *Id.* at 8. Congress also found that 93 percent of these suits are settled and that many are "settled based not on the merits but on the size of the defendant's pocketbook." *Id.*

Congress was particularly concerned with the high costs associated with discovery, which accounts for approximately 80 percent of total litigation costs in securities fraud actions. *Id.* at 14. Testimony before the Securities Subcommittee indicated that discovery in securities actions often "resembles a fishing expedition." *Id.* It was learned that "plaintiffs sometimes file frivolous law-

suits in order to conduct discovery in the hopes of finding a sustainable claim not alleged in the complaint." *Id.* As a result, the Securities Subcommittee recommended heightened pleading requirements and a stay of discovery pending the outcome of a motion to dismiss. The Subcommittee determined that "discovery should be permitted in securities class actions only after the court has sustained the legal sufficiency of the complaint." *Id.* Additionally, the Subcommittee recognized that "a motion to dismiss may remain pending for a period of time." To avoid the loss of relevant evidence that might occur while a motion to dismiss is pending, provisions were added to the Reform Act which make it illegal for any party who receives actual notice of the litigation to destroy or alter evidence. *Id.;* 15 U.S.C. § 78u–4(b)(3)(C). Plaintiffs may also obtain relief from a stay upon a showing of an "exceptional circumstance where particularized discovery is necessary to preserve evidence or to prevent undue prejudice to a party." S. Rep. 104–98, 1995 WL 37283 (Leg.Hist.), at 14, U.S.Code Cong. & Admin.News 679 693; 15 U.S.C. § 78u–4(b)(3)(B). It was recognized, for example, "that the terminal illness of an important witness may necessitate the deposition of the witness prior to ruling on the motion to dismiss." S. Rep. 104–98, 1995 WL 37283 (Leg.Hist.), at 14, U.S.Code Cong. & Admin.News p. 693. From these statements in the legislative history, it is clear that Congress did not contemplate a restrictive reading of the term "pendency" in section 78u–4(b)(3)(B). Rather, Congress balanced the possibility that "a motion to dismiss may remain pending for a period of time" by providing safeguards designed to protect plaintiffs against the loss of evidence that could occur while the sufficiency of the pleading is being tested. S. Rep. 104–98, 1995 WL 37283 (Leg.Hist.), at 14; 15 U.S.C. § 78u4(b)(3)(C). If the Reform Act was read more narrowly, defendants would be afforded very little of the protection that Congress intended in passing the Reform Act.

### Conclusion

In the March 14, 1997 order, Judge Brewster dismissed the following defendants from the action: (1) Robert Johnson; (2) Frederick Parker; (3) John Seiber; (4) John Thomas; and (5) Jeffrey Nash. Plaintiffs have indicated that they do not intend to amend the complaint as allowed by Judge Brewster's March 14, 1997 order. Therefore, the Court finds it appropriate to quash plaintiffs' First Request for Production of Document as to these defendants. In addition, because plaintiffs have made no showing that they will suffer actual prejudice from another brief stay of discovery, the Court finds it appropriate to stay all other discovery in this case until a formal ruling is issued on defendants' Motion for Reconsideration.[3] This order is without prejudice to any party seeking relief from the stay upon a showing that "particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u–4(b)(3)(B).

IT IS SO ORDERED.

---

**3.** The Court declines at this time to address the defendants' request for relief based upon the pending Motion for Certification of Issue for Appeal.