**In re CARNEGIE INTERNATIONAL CORPORATION SECURITIES LITIGATION**

**No. L–99–1688.**

United States District Court, D. Maryland.

April 11, 2000.

---

Charles J. Piven, Law Offices of Charles J. Piven, P.A., of Baltimore, Maryland; Fred T. Isquith, Wolf, Haldenstein, Adler, Freeman & Herz, of New York, New York; Stanley M. Grossman, Pomerantz, Block, Grossman & Gross, of New York, New York; and William P. Butterfield, of Washington, D.C., for Plaintiffs.

D. Christopher Ohley, Blank, Rome, Comisky & McCauley, Baltimore, Maryland, for defendants.

## MEMORANDUM OPINION

GAUVEY, United States Magistrate Judge.

Currently pending before this Court are five related securities class action cases against Carnegie International Corporation (Carnegie) and several of its officers and members of its board of directors. Plaintiffs allege that Carnegie "deceive[d] the investing public including them, through the issuance of false and misleading statements concerning the company's financial condition and operations" and that Carnegie thereby "artificially inflated the modest price of Carnegie's securities" and "cause[d] plaintiff and other members of the class to purchase Carnegie's securities at inflated prices." *Alan Genut v. Carnegie International Corp.*, Civil No. L–99–1688 (D.Md.1999). Pursuant to court order, the cases were consolidated on September 1, 1999. Subsequently, the plaintiffs were ordered to file an amended, consolidated complaint by March 21, 2000, which they did. The defendants have not yet filed an answer or other response (which answer or response is not due until 45 days after the filing of the complaint), although defendants represented to the Court that they planned to "assert, in a Motion to Dismiss that they will file, that these ... allegations in the Complaint do not state a cause of action on which relief may be granted." (Paper No. 14, 2). In a letter to the Court dated March 30, 2000 (the date of the scheduled further hearing), defendants softened their position, informing the Court that it was "probable" that they will file a motion to dismiss the consolidated complaint. (Paper No. 21).

By Order of Reference dated February 2, 2000, the Honorable J. Frederick Motz, for the Honorable Benson E. Legg, re-

ferred to the undersigned magistrate judge the resolution of the pending Motion to Quash. A telephone hearing was held on February 18, 2000; no further argument is necessary.

The present dispute stems from a subpoena duces tecum Carnegie served on Grant Thornton, LLP, Carnegie's former accountant and auditor. That subpoena requested 21 document categories and calls for testimony on 32 separate subjects, including such sweeping subjects for examination as "all work done by [Grant Thornton] for [Carnegie]," (Paper No. 11, Ex. A, at 7, ¶ 4), or "all work done by [Grant Thornton] for any of [40] ... persons." Grant Thornton is not a named party to the lawsuit. However, Carnegie has made it clear that should the lawsuit go forward, it will assert that it "relied, in good faith, upon the advice given by... Grant Thornton." (Paper No. 14 at 12.) Moreover, Carnegie's submissions relative to this motion make clear its now contentious relationship with Grant Thornton, leaving little doubt that Carnegie will seek to implead Grant Thornton as a third party defendant if the case goes forward on the merits. Carnegie served the disputed subpoena after the Court entered an Order authorizing the parties to agree among themselves to waive the protections provided in the Private Securities Litigation Reform Act (PSLRA or the Reform Act) and engage in discovery among third parties. (Paper No. 10). However, the Order specifically did "not preclude any nonparties from filing a motion for a Protective Order." (*Id.*)

Grant Thornton asserts that the Court should either quash the subpoena or, in the alternative, issue a protective order on the grounds that: (1) third parties are protected by the automatic stay provisions of the PSLRA; and (2) the discovery is over broad, unduly burdensome, and encompasses protected materials. (Paper

No. 11 at 2). Carnegie concedes that "courts routinely have enforced the stay provisions in cases where a motion to dismiss has been filed *or may be filed in the future*" (Paper No. 14, 14), but argues that "[t]he PSLRA was created to shield defendants from frivolous lawsuits and other abuses by shareholders ... to protect plaintiffs or third parties." (Paper No. 14, 15). Additionally, Carnegie argues that it will be unfairly prejudiced if Grant Thornton does not comply with the discovery requests, thereby entitling it to the discovery under the statute, 15 U.S.C. § 78u–4(b)(3)(B). Plaintiffs argue that the PSLRA does not bar the discovery of Grant Thornton as no motion to dismiss is in fact pending and the automatic stay protections are afforded only to defendants, not third parties.

Under the following analysis, the Court finds that Grant Thornton is protected by the automatic stay provisions of the PSLRA, that Carnegie has failed to show a particularized need, and therefore grants Grant Thornton's Motion to Quash.[1] However, since the PSLRA provision on preservation of evidence during a stay only expressly applies to a named party, the Court orders, as Grant Thornton offered to do, that Grant Thornton preserve all documents subject to Carnegie's subpoena pursuant to 15 U.S.C. § 78u–4(b)(3)(c).

### *ANALYSIS*

The Reform Act of 1995 provides, in pertinent part, that "[i]n any private action arising under this chapter, *all discovery* and other proceedings shall be stayed during the *pendency of any motion to dismiss,* unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u–4(b)(3)(B) (emphasis added).

---

1. Because the Court grants the Motion to Quash on the grounds that discovery on Grant Thornton, as a third party, falls under the automatic stay provisions of the PSLRA, it is

not necessary to address Grant Thornton's alternative argument that defendants' discovery request is over broad, unduly burdensome, and encompasses protected materials.

The Reform Act was passed to address the perceived widespread abuse of the securities laws by overzealous attorneys and investors. Congress found that the federal securities laws are frequently misused by the filing of frivolous suits "alleging violations of the federal securities laws in the hope that defendants will quickly settle to avoid the expense of litigation. These suits, which unnecessarily increase the cost of raising capital and chill corporate disclosure, are often based on nothing more than a company's announcement of bad news, not evidence of fraud." S. Rep. 104–98, 1995 WL 372783 (Leg.Hist.), at 4, 1995 U.S.Code Cong. & Admin. News 679, 683. Congress also found that 93 percent of these suits are settled and that many are "settled based not on the merits but on the size of the defendant's pocketbook." *Id.* at 8, 1995 U.S.Code Cong. & Admin. News at 688.

Congress was particularly concerned with the high costs associated with discovery, which accounts for approximately 80 percent of total litigation costs in securities fraud actions. *Id.* at 14, 1995 U.S.Code Cong. & Admin. News at 693. Testimony before the Securities Subcommittee indicated that discovery in securities actions often "resembles a fishing expedition." *Id.* The Subcommittee determined that "discovery should be permitted in securities class actions only after the court has sustained the legal sufficiency of the complaint." *Id.*

A. *Grant Thornton, As A Third Party, is Entitled to the Protective Stay Provisions of the PSLRA*

 Defendants challenge Grant Thornton's standing to protection under the stay provisions of the PSLRA. They argue that Congress intended to protect only named defendants from discovery until the sufficiency of the complaint was tested, not non-parties or potential defendants.

It is well settled that when interpreting any statute, a court must first look to the plain meaning of the language, used by Congress. *See Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); *Alexander S. v. Boyd,* 113 F.3d 1373, 1383 (4th Cir.1997). "[I]f the statutory language is unambiguous and 'the statutory scheme is coherent and consistent,'" judicial inquiry ends. *Robinson,* 519 U.S. at 340, 117 S.Ct. 843. "The plainness or ambiguity of the statutory language is determined by the reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Id.*

Here, the Act clearly states: "In any private action arising under this chapter, *all* discovery and other proceedings shall be stayed during the pendency of any motion to dismiss ..." 15 U.S.C. § 78u–4(b)(3)(B) (emphasis added). There is no distinction between discovery of non-parties and parties. *See Powers v. Eichen,* 961 F.Supp. 233, 235 (S.D.Cal.1997) ("By its language, the Reform Act addresses 'all discovery' with no distinction between that sought from nonparties as opposed to parties.") Thus, the Court's inquiry could stop based on the plain language of the statute on this point. *See Robinson,* 519 U.S. at 340, 117 S.Ct. 843. Once the stay is triggered, all discovery and proceedings cease.

The defendants, however, ignore the plain language of the statute and argue legislative intent: "The PSLRA was created to shield defendants from frivolous lawsuits and other abuses by shareholders. It was not created to protect plaintiffs or third parties." (Paper No. 14 at 15). The Court rejects defendants' reading of the Act and their reliance on the underlying legislative history, and holds instead that Congress manifest intent was to protect all potential targets of securities actions from abusive litigation practices. That intent is first and foremost manifest by the unequivocal language of the act. It is also clear when considered in "the broader context of the statute as a whole," or, as defendants' urge, when resort is made to legislative history.

Even though the congressional reports employ the word "defendant," it is clear that Congress intended to protect not just named defendants in securities actions, but potential defendants (or third party defendants) as well. In its Conference Report dated November 28, 1995, the House stated specifically: "This Conference Report seeks to protect investors, issuers, and all who are associated with our capital markets from abusive securities litigation." H.R.Rep. No. 104–369 (1995), 1995 U.S.Code Cong. & Admin. News 730, 731. The abusive practices referred to include, *inter alia:* "the targeting of deep pocket defendants, including accountants, underwriters, and individuals who may be covered by insurance without regard to their actual culpability...." *Id.* at 730. Congress's reasoning behind the stay provision was based on its belief that "discovery should be permitted in securities class actions only after the court has sustained the legal sufficiency of the Complaint." S.Rep. No. 104–98 at 14 (1995), 1995 U.S.Code Cong. & Admin. News at 693.

In this case, the defendants have expressed their intent to assert the affirmative defense of good faith reliance upon the advice given by its former accountant and auditor, Grant Thornton. (Paper No. 14 at 12 at 20). Undoubtedly, some of defendants' requested discovery is relevant to their affirmative defense and to support a claim against Grant Thornton as a third party defendant. In fact, defendants assert in their opposition that "[t]he documents will provide Carnegie with a basis for terminating this shareholder litigation at an early time and at the smallest possible cost. Grant Thornton played a vital role in the matters affecting this case." (Paper No. 14 at 20). In light of the plain language of the statute and the legislative intent to protect named and potential defendants from financially burdensome fishing expeditions until the sufficiency of the primary complaint has been tested, defendants' argument fails.

The discovery appears to the Court to be nothing more than a fishing expedition by both parties to obtain evidence that can form the basis of a case against Grant Thornton.[2] Obviously, such discovery could very well turn out to be unnecessary if the plaintiffs' complaint is held insufficient under Fed.R.Civ.P. 12 and the heightened pleading requirements of the Act. Defendants are correct in their assertion that the rules of statutory construction do not permit a court to interpret a statute in such a way as to lead to "absurd results" or that would defeat legislative intent. (Paper No. 14 at 14, n.14). However, based on the language and legislative history of the statute and the facts of the

**2.** The Court agrees with Grant Thornton that "[i]t can only be assumed that one or more of the parties intends to file an action against Grant Thornton ... [and that] [t]he procedure used here, an agreement between the parties to waive the discovery stay, is nothing more than a backdoor attempt to evade the protections of the Securities Reform Act." (Paper No. 11, 7).

The unity of interest of plaintiffs and defendants against Grant Thornton on this point is plain. First, the parties entered into an agreement in December 1999, whereby defendants would make available to plaintiffs any response by Grant Thornton to the subpoena. (Paper No. 6, Ex. A). In exchange, plaintiffs agreed that issuance of defendants' subpoena on Grant Thornton did not constitute a waiver of the rights defendants possess under the PSLRA (the automatic stay provision). *Id.* In other words, plaintiffs promised not to "argue in this litigation, or any other forum, in any pleading, motion, or by any other means, that issuance of the subpoena and production of records or testimony in response thereto, has entitled or will entitle the plaintiffs to undertake any other discovery in this litigation, or in any other litigation whatsoever." *Id.* Next, as Grant Thornton points out, the plaintiffs took the "novel position of opposing Grant Thornton's Motion to Quash" the defendants' subpoena. The Court does not know what, if any, claim plaintiffs might be able to plead against Grant Thornton on theories of duty or otherwise. Of course, the plaintiffs would not be restricted in their inquiry to Grant Thornton, notwithstanding the fact that defendants noted the deposition. Accordingly, the deposition of Grant Thornton might possibly be used to support a claim against Grant Thornton by plaintiffs or a third party claim against Grant Thornton by defendants.

case, this Court's conclusion that the statute's protective stay provision applies to *all* discovery, including that of third parties, does not lead to "absurd results" or defeat legislative intent. Indeed, adoption of defendants' interpretation would result in extensive and expensive discovery on an affirmative defense or likely third party claim which might be made wholly unnecessary by a later finding of the insufficiency of the complaint in chief. *That* would be an absurd result, directly at odds with congressional mandate that all discovery be stayed until the sufficiency of the complaint is tested.

Even though the parties have agreed to engage in discovery of third parties, the Court specifically noted in its Order that such an agreement does not prevent the third parties from moving for a protective order. As Grant Thornton has submitted such a motion, and because permitting defendants' discovery would defy the plain language of the Act and eviscerate the legislative goals of the PSLRA, this Court finds that the PSLRA applies to bar the requested discovery from Grant Thornton at this time.

B. *The Automatic Stay Provision of the PSLRA Apply Until the Defendants Have Had an Opportunity to Test the Sufficiency of the Complaint Under Governing Rules and Orders.*

In finding that the automatic stay provisions of the PSLRA apply to third party discovery, the next question is whether the stay is available where, as here, a motion to dismiss has not yet been filed. Under the Court's scheduling order, Carnegie must answer or otherwise respond to the consolidated amended complaint sometime in May. Carnegie originally expressed its definite intention to file a motion to dismiss testing the sufficiency of

the complaint. (Paper No. 14, 12). More recently, Carnegie expressed to the Court its only "probable" intent to do so. (Paper No. 21). Defendants' introduction of an element of uncertainty in their intentions does not affect the ruling. Until the opportunity to test the sufficiency of the complaint has passed, the congressional intent is clear—no discovery should commence. Grant Thornton argues in its Motion to Quash that courts have applied the stay provisions of the PSLRA not only where a motion to dismiss has already been filed, but in cases where such a motion may be filed in the future. (Paper No. 11 at 4.) Defendants concede this. (Paper No. 14, 14). Plaintiffs, however, assert in their Opposition that the statute's stay provision does not apply in this case because the plain language of the statute requires a motion to dismiss to be filed with the court before the stay provision goes into effect. (Paper No. 13 at 3.)

The defendants and Grant Thornton disagree, arguing that such an interpretation of the statute would defeat the legislative intent underlying the stay provision. Specifically, defendants cogently argue:

> "[p]laintiffs' literal construction of the statute would render the stay provisions nugatory in the time between the filing of a complaint and filing of a motion to dismiss permit[ing] *the plaintiffs* to engage in discovery, without restriction, at any time before the filing of a motion to dismiss, subject only to the rigors and restrictions of Rule 26 of the Federal Rules of Civil Procedure. Clearly, such a result would be completely inconsistent with Congressional intent in enacting the PSLRA." [3]

(Paper No. 14 at 14 n.14.)

Grant Thornton also argues plaintiffs' strict interpretation of the statute "would

---

**3.** Defendants also argue that under the Local Rule 104.4(b) also applies here. (Paper No. 14 at 15, n.14.) Defendants are correct in their assertion that under normal circumstances, the Local rules prohibit discovery in this type of case until the Court issues a

scheduling order or until parties mutually agree to undertake discovery. Given that there was an order permitting third party discovery but reserving the right of the third party to file a motion for protective order, the

render the stay provision meaningless, especially in situations such as here, where the parties have stipulated to a time schedule which expands the time periods provided months beyond those contained in the Federal Rules." (Paper No. 15 at 3). The Court agrees.

However, the Court acknowledges that this question of statutory meaning may not be resolved by simple reference to the plain language of the statute, as the last question was. When viewed in a vacuum, the requirement of the "pendency of any motion to dismiss" to trigger the stay of discovery is subject to many interpretations, including the interpretation that plaintiffs propose, namely, that a motion must have been filed *in fact* for the stay to be triggered. However, the term "pendency" does not necessarily connotate the formal framing of an issue through a filing. It can just as easily be interpreted as connotating the period while an issue is unresolved. Black's Law Dictionary defines the term "pending" as: "[b]egun but not yet completed; during; before the conclusion of; prior to the completion of; unsettled; undetermined; in process of settlement or adjustment. Thus, an action or suit is 'pending' from its inception until the rendition of final judgment. Pending means awaiting an occurrence or conclusion of action, period of continuance of indeterminacy." *Black's Law Dictionary*, 1021 (5th ed.1979).

Courts have differed in their interpretation of the stay provision and whether it should apply when a motion to dismiss has not actually been filed with the court. Some courts have read the term "pendency" in its most narrow sense holding that even in instances where the defense has expressed an intention to file a motion to dismiss, the automatic stay provision does not apply until such a motion is actually filed in the court. *See Dartley v. Ergobilt, Inc.*, No. CIV.A.3:98–CV–1442–G, 1998 WL 792500 at *1 (N.D.Tex. Nov.4, 1998) (denying appeal from magistrate

rule does not resolve the issue before the

judge's denial of motion to stay), *Rosenbaum & Co. v. H.J. Myers & Co.*, No. CIV.A.97–824, 1997 WL 689288 at *5 (E.D.Pa. Oct.9, 1997) (ordering stay of discovery under 15 U.S.C. § 78u–4(b)(3)(B) be lifted after granting in part defendants' motion to dismiss and granting plaintiffs leave to amend their complaint); *Novak v. Kasaks*, No. 96CIV.3073(AGS), 1996 WL 467534 at *1 (S.D.N.Y. Aug.16, 1996) (" 'The request to stay discovery at this stage of the proceedings, prior to the filing of a motion to dismiss is denied, with leave to renew upon the filing of such motion.' ")

In their opposition to Grant Thornton's Motion to Quash, plaintiffs rely primarily on the *Dartley* decision, wherein the court denied the defendants' motion to stay plaintiff's notice of deposition of a third party. The court in that case held that "[u]nder the PSLRA, discovery must be stayed only when a motion to dismiss has actually been filed." *Dartley*, 1998 WL 792500 at *2. The fact that defendants had expressed a clear intent to file a motion to dismiss was not enough to trigger the statutory provision. *Id.*

However, plaintiffs here fail to address the *Dartley* court's explanation that even if a motion to dismiss had been pending, the particularized discovery would be permitted because it was necessary to preserve evidence, as the third party witness resided beyond the subpoena power of the court. *Id.* In the case at bar, Grant Thornton has already represented to the Court and to parties that it will preserve the documents. Furthermore, unlike the third party in *Dartley*, who did not object to her deposition being taken, Grant Thornton is objecting to defendants' subpoena.

This Court, therefore, rejects the reasoning of these cases, as they fail to consider and interpret the meaning of "pendency" in light of the clear and strongly expressed goals of the Act. The purpose of the Act was to restrict abuses in securities

Court.

class-action litigation, including: (1) the practice of filing lawsuits against issuers of securities in response to any significant change in stock price, regardless of defendants' culpability; (2) the targeting of deep pocket defendants; (3) the abuse of the discovery process to coerce settlement; and (4) the manipulation of clients by class action attorneys. *See Advanta Corp. Secs. Litigation*, 180 F.3d 525, 530–31 (3rd Cir. 1999).

Congressional purpose is unmistakable: "discovery should be permitted in securities class actions only after the court has sustained the legal sufficiency of the Complaint." S.Rep. No. 104–98 at 14 (1995), 1995 U.S.Code Cong. & Admin. News at 693. As already discussed, the legislation was to protect investors, issuers, and all who are associated with our capital markets from abusive securities litigation. H.R.Rep. No. 104–369 (1995). Another court examined the legislative history of the Act to determine whether the stay continued during the pendency of a motion to reconsider a ruling denying a motion to dismiss, and concluded that "it is clear that Congress did not contemplate a restrictive reading of the term "pendency" in section 78u–4(b)(3)(B)." *Powers*, 961 F.Supp. at 236.

More well reasoned decisions have held the automatic stay provision of the Act is triggered by the mere indication by defense of its intention to file a motion to dismiss. For example, the district court in *In re Trump Hotel Shareholder Derivative Litigation*, No. 96CIV7820(DAB)(HBP), 1997 WL 442135 (S.D.N.Y. Aug. 5, 1997) denied defendants' motion to quash plaintiff's third party subpoena, holding the stay provision of the PSLRA applied where the defense had represented its intent to file a motion for dismissal. *Id.* at *2. The court specifically noted that "[a]lthough plaintiffs are correct that no dismissal motion has yet been filed, this appears to be solely the result of the schedule to which the parties have agreed." *Id.; see also Global Intellicom,*

*Inc. v. Thomson Kernaghan & Co.*, No. 99CIV342(DLC), 1999 WL 223158 at *1 (S.D.N.Y. April 16, 1999) (noting that discovery had been stayed pursuant to 15 U.S.C. § 78u–4(b)(3)(B), on the grounds that defendants had indicated that they would be filing a motion to dismiss); *cf. SG Cowen Sec. Corp. v. United States District Court for the Northern District of California*, 189 F.3d 909 (9th Cir.1999) (vacating order granting limited discovery for the purpose of uncovering facts to support allegations for filing an amended complaint).

In the present case, the defense has informed the Court that it probably intends to file a Motion to Dismiss, and the parties have agreed in the Stipulation Extending Time to File Consolidated Amended Complaint that such a motion would be due 45 days after plaintiffs' consolidated complaint is filed, which is sometime in May. (Paper No. 18, ¶ 4). Therefore, like the *Trump* case, it appears that defendants have not yet filed a motion to dismiss pursuant to the mutual agreement of the parties. The intent of the PSLRA is served by a stay of discovery until the defendants have the opportunity to test the sufficiency of the complaint under the orderly procedures provided by the rules and court orders. Any other interpretation would encourage unseemly gamesmanship, *i.e.*, a race to serve subpoenas for discovery before a defendant had the opportunity to test the sufficiency of the complaint. The Federal Rules provide for the orderly and ordered consideration of the merits of legal disputes—not a prize to the swiftest. Therefore, this Court rejects plaintiffs' argument that the automatic stay provision of the PSLRA does not apply because the defense has not yet filed its motion to dismiss. Until the deadline for filing a motion to dismiss passes, or the defendants otherwise waive their rights to file a motion, or the Court rules on a motion to dismiss, the stay provisions are

available.[4]

### C. Defendants Have Failed to Demonstrate That They Will Be Unduly Prejudiced If Grant Thornton Does Not Comply With the Discovery Request

■ Pursuant to the statute, the automatic stay provision shall be lifted only where the party is seeking particularized discovery to preserve evidence or to prevent undue prejudice. Defendants have failed to demonstrate either of these exceptional circumstances. *See* 15 U.S.C. § 78u–4(b)(3)(B). First, defendants' subpoena does not seek "particularized discovery." Not only does the subpoena include 21 document requests and calls for testimony on 32 separate subjects, but, as Grant Thornton argues, the breadth of the discovery is so broad as to cover "virtually every piece of paper and every piece of information at Grant Thornton relating to *no less than seventy-seven separate individuals and entities.*" (Paper No. 11 at 9) (emphasis in original).

Second, defendants cannot rightfully argue it is seeking to preserve evidence, as Grant Thornton has already represented to the Court that it will preserve the evidence. (*Id.* at 6.)

Third, defendants have not shown that failure of Grant Thornton to respond to the subpoena will result in undue prejudice at this stage of the litigation. Defendants admit in their opposition that "the documents requested by Carnegie from Grant Thornton will assist Carnegie in establishing that it relied in good faith upon the accounting, consulting and auditing advice which Grant Thornton provided, while engaged by Carnegie. The documents will provide Carnegie with a basis for terminating this shareholder litigation at an early time and at the smallest possible cost." (Paper No. 14 at 20). Discovery, of course, does not bear on, or affect the likelihood of success of a Fed.R.Civ.P. 12(b)(6) motion. As Grant Thornton correctly stated: "Denial of access to Grant Thornton's documents, in a situation in which Carnegie has represented that the amended complaint will not survive a motion to dismiss, cannot constitute undue prejudice since the documents are wholly irrelevant to the motion to dismiss." (Paper No. 15 at 6.)

### CONCLUSION

Based on the foregoing analysis, the Court grants Grant Thornton's Motion to Quash Defendants' Subpoena, but orders preservation of the requested documents pursuant to 15 U.S.C. § 78u–4(b)(3)(B).

---

**4.** Indeed, the *Powers* court would extend the stay until the Court ruled on any motion to reconsider a denial of the motion to dismiss.