See, also, 219 F.R.D. 343.

**In re ROYAL AHOLD N.V. SECURITIES & ERISA LITIGATION.**

**Civ. No. 1:03–MD–01539.**

United States District Court,
D. Maryland.

March 12, 2004.

Seth D. Goldberg, Seth D. Goldberg PC, Washington, DC, Andrew J. Entwistle, Robert Nicholas Cappucci, Stephen David Oestreich, Asuncion Cummings Hostin, Johnston deForest Whitman, Jr., Entwistle and Cappucci LLP, Robert S. Schachter, Zwerling Schachter and Zwerling, Lester Levy, Wolf, Popper, Ross, Wolf & Jones, Fred Taylor Isquith, Wolf Haldenstein Adler Freeman and Herz LLP, Ralph M. Stone, Lee S. Shalov, Shalov Stone and Bonner LLP, Steven G. Schulman, Milberg Weiss Bershad Hynes and Lerach LLP, Daniel L. Berger, Hannah Greenwald, Jeffrey Neil Leibell, Bernstein Litowitz Berger and Grossmann, Menachem E. Lifshitz, Bernstein Liebhard and Lifshitz LLP, Jonathan Plasse, Goodkind Labation Rudoff and Sucharow LLP, Christopher Lometti, Frank R. Schirripa, Schoengold and Sporn PC, New York, NY, Gregory M. Kline, Adelberg Rudow Dorf and Hendler LLC, Charles J. Piven, Marshall N. Perkins, Law Offices of Charles J. Piven PA, Steven Donald Silverman, Silverman and Thompson, Robert K. Jenner, Janet Willoughby Gershon Getz and Jenner LLC, Baltimore, MD, Samuel Howard Rudman, Robert Michael Rothman, Cauley Geller Bowman and Rudman LLP, Melville, NY, Steven J. Toll, Daniel Stephen Sommers, Robert Joseph Barton, Cohen Milstein Hausfeld and Toll PLLC, Conor R. Crowley, Finkelstein Thompson and Loughran, Washington, DC, Robert I. Harwood, Wechsler Harwood Halebian and Feffer LLP, New York, NY, Ronald B. Rubin, Rubin and Rubin Chtd., Rockville, MD, Marc A. Topaz, Schiffrin and Barroway LLP, Bala Cynwyd, PA, for Plaintiffs.

Gerard J. Gaeng, David Matthew Wyand, Rosenberg Martin Funk and Greenberg LLP, G. Stewart Webb, Jr., Gabrielle S. Moses, Venable Baetjer and Howard LLP, Max Higgins Lauten, Kramon and Graham, Daniel Frank Goldstein, Brown Goldstein and Levy LLP, Baltimore, MD, John Arak Freedman, Angela Joy Showalter, Leslie Wharton, Scott B. Schreiber, Arnold and Porter, Washington, DC, Douglas P. Baumstein, Glenn M. Kurtz, Joseph B. Schmit, White and Case LLP, New York, NY, for Defendants.

### *MEMORANDUM*

BLAKE, District Judge.

The lead securities plaintiffs in this multidistrict securities and ERISA litigation have filed a motion seeking a limited reprieve from the discovery stay that applies by operation of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4(b)(3), in securities class actions such as this one. (Docket no. 85.) Specifically, they have requested permission to seek discovery of materials produced in connection with various external investigations of the defendants' alleged misconduct, as well as reports generated by the defendants' internal investigations. The United States government has intervened in the case and moved to prevent discovery of the investigative reports.[1] (Docket no. 112.) The plaintiffs' motion has been fully briefed, and the government has filed a sealed memorandum

---

1. The government also sought to withhold witness statements and interview notes related to the various investigations, but the plaintiffs agreed to withdraw that aspect of their discovery request, making it unnecessary for the court to address the issue.

in support of its motion.[2] In addition, the court heard oral argument on March 5, 2004.[3] Having considered all the arguments, I will now grant the plaintiffs' motion to the extent necessary to allow discovery of materials previously produced to outside agencies. Pursuant to the government's request, I will postpone discovery of the investigative reports for a reasonable period.

## BACKGROUND

Only a brief summary of the facts is necessary for present purposes.[4] The triggering event for this litigation was a series of negative announcements and financial restatements in early 2003 by Royal Ahold, N.V., a Dutch holding company that controls retail grocery operations in Europe, Asia, and the Americas. (*See* Compl. ¶¶ 57–59.[5]) While the company's stock is listed on European exchanges,[6] American Depository Receipts ("ADRs") for Royal Ahold shares trade on the New York Stock Exchange, and the company's subsidiaries conduct substantial business in the United States. (*Id.* ¶ 57.) According to the plaintiffs, Royal Ahold undertook some $19 billion in acquisitions between 1996 and 2003, aggressively expanding its operations in the United States and elsewhere. (*Id.* ¶ 126.) The company's United States assets are held by Ahold USA, Inc., a wholly owned subsidiary of Royal Ahold, N.V., and Ahold USA's affiliate, Ahold USA Holdings, Inc. (*See id.* ¶ 60.) All three Ahold entities—Royal Ahold, N.V., Ahold USA, Inc., and Ahold USA Holdings, Inc.— are named defendants in this litigation, and will be referred to collectively as "Royal Ahold" throughout this Memorandum.

One of Royal Ahold's most significant United States subsidiaries is U.S. Foodservice, Inc. ("USF"), a national food supply company based in Columbia, Maryland over which Royal Ahold consolidated 100% control in April 2000. (*See id.* ¶¶ 62–63, 139.) USF is also a named defendant in this case. According to the plaintiffs, accounting irregularities at USF required Royal Ahold to announce on February 24, 2003 that it would be restating its earnings for Fiscal Years 2000 and 2001 by roughly $500 million. (*Id.* ¶ 182.) After a more thorough investigation, the company announced on May 8, 2003 that the total income restatement attributable to USF would amount to approximately $880 million for the period from April 2000 to December 28, 2002. (*Id.* ¶ 238.) The company's February 24, 2003 announcement also advised investors of "suspicious transactions" discovered at an Argentine affiliate, Disco, S.A.; the investigation confirmed these irregularities, and also exposed some $29 million in income overstatements attributable to a United States subsidiary named Tops Markets, bringing Royal Ahold's total earnings restatement to $1.12 billion. (*Id.* ¶¶ 250–51, 255.) In addition, on May 16, 2003, Royal Ahold announced that a change in accounting methodology associated with various joint venture investments would require the company to reduce its revenue figures for the preceding two years by some $24.8 billion. (*Id.* ¶ 248.) Royal Ahold eventually detailed its accounting errors in an annual report on Form 20–F filed with the Securities and Exchange Commission ("SEC") on October 17, 2003 and amended on October 31, 2003. (*See* Royal Ahold Form 20–F, Entwistle Decl. in Supp. of Pl.'s Mot. to Lift Stay Ex. 1.)

2.  The plaintiffs responded to the government's motion in their reply brief.

3.  The hearing on March 5, 2004 also addressed a motion by the lead securities plaintiffs seeking a document preservation order. Counsel for the lead plaintiffs and the principal defendant, Royal Ahold, indicated at the hearing that they would work to agree on a procedure for resolving certain document preservation issues. Subsequent correspondence submitted to the court (docket nos. 147–49) indicates that counsel are working towards that end. The court will await the outcome of these negotiations before ruling on the document preservation motion.

4.  While this summary is drawn primarily from the securities plaintiffs' complaint, there does not appear to be significant dispute as to the facts stated here.

5.  All citations to the complaint refer to the securities plaintiffs' Consolidated Amended Complaint (docket no. 122).

6.  The stock's primary listing is on the Euronext exchanges in Amsterdam, Paris, and Brussels. It also has a secondary listing on the Swiss Exchange in Zurich. (*See* Compl. ¶ 57.)

Needless to say, Royal Ahold's accounting restatements had a significant effect on the company's stock price. According to the securities plaintiffs' complaint, the price of Royal Ahold's shares and ADRs fell by over 60% on February 24, 2003 alone, the day of the first income restatement announcement. (Compl. ¶ 1.) By June 18, 2003 disgruntled investors had filed some thirty-three securities class actions based on the loss in value of Royal Ahold ADRs. At the same time, regulators in Europe and the United States launched civil and criminal investigations of individuals and entities associated with Royal Ahold. Among the agencies conducting such investigations are: the United States Department of Justice, the United States Attorney's Office for the Southern District of New York ("SDNY"), the SEC, the New York Stock Exchange ("NYSE"), the National Association of Securities Dealers ("NASD"), the Office of the Dutch Public Prosecutor, the Euronext Amsterdam Exchange, and the Dutch Authority for Financial Markets. (*See* Compl. ¶¶ 209–28.)

On June 18, 2003, the Judicial Panel on Multidistrict Litigation consolidated the securities class actions and transferred them to this court along with related actions based on the Employee Retirement Income Security Act ("ERISA"). (*See* Docket no. 1.) On November 4, 2003, I appointed the Public Employees' Retirement Association of Colorado ("COPERA") and Generic Trading of Philadelphia, LLC ("Generic") as the lead plaintiffs in the securities lawsuits pursuant to 15 U.S.C. § 78u–4(a)(3).[7] (Docket no. 70.) On February 18, 2004, the lead plaintiffs filed a 430–page Consolidated Amended Complaint (docket no. 122), which they are now endeavoring to serve on the various named defendants. As of the date of this Memorandum, the defendants that have been served with some version of the complaint include: Ahold USA, Inc. and Ahold USA Holdings, Inc.; USF; the American and Dutch arms of Deloitte & Touche, Royal Ahold's accounting firm [8]; several individual executives and board members associated with Royal Ahold

or USF; and several entities that served as underwriters to Royal Ahold securities offerings. Royal Ahold, N.V., the Dutch parent company, is named as a defendant but has not yet accepted service of process.

## ANALYSIS

### I. The PSLRA Discovery Stay

#### A. The Statutory Background and the Plaintiffs' Motion

The PSLRA imposes special constraints on discovery in securities class actions such as this one. "In any private action arising under this chapter," the statute provides, "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u–4(b)(3)(B). The purpose of the stay, according to the legislative history, is "to minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that corporate defendants will settle those actions rather than bear the high cost of discovery, *see* H.R. Conf. Rep. No. 104–369, at 37 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 736, or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint, *see* S.Rep. No. 104–98, *reprinted in* 1995 U.S.C.C.A.N. 679, 693." *In re WorldCom, Inc. Sec. Litig.,* 234 F.Supp.2d 301, 305 (S.D.N.Y.2002) (citing *In re Lernout & Hauspie Sec. Litig.,* 214 F.Supp.2d 100, 106 (D.Mass.2002)). Though the defendants have yet to file a motion to dismiss, the stay applies in this case because they have indicated their intention to do so by an agreed-upon deadline. *See In re Carnegie Int'l Corp. Sec. Litig.,* 107 F.Supp.2d 676, 681–83 (D.Md.2000).

■ The plaintiffs have moved the court to permit discovery of the following materials: (1) documents, excluding witness statements and interview notes, that Royal Ahold, USF,

---

**7.** Unless otherwise indicated, all references to the "plaintiffs" in this Memorandum refer to COPERA and Generic, the securities lead plaintiffs.

**8.** These two entities are Deloitte & Touche, LLP and Deloitte & Touche Accountants, respectively. They will be referred to collectively as "Deloitte & Touche" in this Memorandum.

or Deloitte & Touche have "produced to governmental, regulatory, or self regulatory agencies," including legislative or executive branch officials of the United States government, the SDNY U.S. Attorney's Office, the SEC, the NYSE, the NASD, the Office of the Dutch Public Prosecutor, the Euronext Amsterdam Exchange, and the Dutch Authority for Financial Markets; and (2) the reports of various internal investigations conducted by Royal Ahold or USF pertaining to the accounting practices and business affairs of Royal Ahold, USF, and other Royal Ahold subsidiaries. (*See* Pl.'s Reply Ex. A.) The plaintiffs argue that this discovery is adequately "particularized" in light of caselaw interpreting that term, and that it is "necessary" both to preserve relevant evidence and to prevent undue prejudice. The plaintiffs' initial request made no exception for witness statements and interview notes (*see* Pl.'s Mem. at 7–9), but they agreed to exclude those materials at the government's request.[9] The government has also moved to prevent discovery of the investigative reports, which the plaintiffs continue to seek.

## B. Discovery as to Royal Ahold and USF

The plaintiffs have made a sufficient showing of need to permit the requested discovery as to Royal Ahold and USF. The discovery they have requested from these parties is particularized, and it is necessary both to preserve evidence and to prevent undue prejudice to the securities plaintiffs.

On the issue of particularity, the plaintiffs argue, citing *WorldCom* and two unpublished opinions,[10] that a request for documents previously produced in connection with internal and external investigations is particularized within the meaning of the PSLRA. The defendants counter that a request as large as

the plaintiffs'—Royal Ahold estimates the volume at one million pages—cannot qualify under the statute; a set of documents is not "particularized," they argue, simply because it is "identifiable." Yet if "particularized" is not synonymous with "identifiable," neither does it necessarily mean "small." *See Mishkin v. Ageloff,* 220 B.R. 784, 793 (S.D.N.Y. 1998) (noting that "the concept of particularized discovery is a nebulous one, and the phrase is not devoid of ambiguity"). The meaning of the phrase in any particular case must take into account the nature of the underlying litigation, and in this case the complaint alone extends for 430 pages and alleges multibillion dollar accounting errors by a firm with operations on at least four continents. The volume of requested documents is not unreasonable in light of this background. Moreover, unlike cases rejecting virtually unlimited discovery requests, *see, e.g., Carnegie Int'l,* 107 F.Supp.2d at 684; *Faulkner v. Verizon Communications, Inc.,* 156 F.Supp.2d 384, 404–05 (S.D.N.Y.2001); *Mishkin,* 220 B.R. at 793–95, the motion at issue here describes a "clearly defined universe of documents," and the burden of producing the materials should be slight, considering that the defendants have previously produced them to other entities.[11] *See WorldCom,* 234 F.Supp.2d at 306. Thus, under the circumstances, the plaintiffs' request satisfies the threshold requirement of particularity.

Turning now to the second requirement for lifting the stay—necessity to preserve evidence or prevent undue prejudice—I note at the outset, as have other courts, that it makes sense to interpret the broad, undefined terminology of this provision in light of Congress's purposes in passing the PSLRA. *See, e.g., WorldCom,* 234 F.Supp.2d at 306; *In re Comdisco Sec. Litig.,* 166 F.Supp.2d

9. The plaintiffs have also dropped a request for "documents related to and/or constituting Ahold's, USF's, and/or Deloitte's document retention and preservation policies or procedures" (Pl.'s Mem. at 8), and they have limited their request relating to the investigative reports to the reports themselves (*see* Pl.'s Reply Ex. A), as opposed to "all documents and materials produced or composed in connection with" the investigations (*see* Pl.'s Mem. at 8–9).

10. *In re Enron Corp. Sec., Derivative & "ERISA" Litig.,* No. MDL–1446, Civ. No. H–01–3624, 2002 WL 31845114 (S.D.Tex. Aug. 16, 2002); *In re Tyco Int'l Ltd. Multidistrict Litig.,* MDL Docket No. 02–1335–3 (D.N.H. Jan. 28, 2003).

11. The court recognizes that the defendants may need to review the documents for privilege, but the larger task of compiling the materials should already be complete.

1260, 1263 (N.D.Ill.2001); *cf. Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein,* 917 F.Supp. 717, 721 (S.D.Cal.1996) (finding that "[t]he legislation by its terms does not carve out specific types of actions which will be exempt from the stay," but noting that "the 'undue prejudice' exception contemplates an analysis of the facts and circumstances surrounding a request for an exception to the mandated discovery stay"). When a plaintiff files a mere strike suit or fishing expedition of the sort Congress sought to discourage, there can be little "necessity" to preserve evidence, as the evidence is unlikely to support a claim. Nor can the prejudice due to delay be "undue," considering that prejudice to such plaintiffs is just what Congress intended to achieve. Here, however, the securities plaintiffs' case, whatever its ultimate disposition, is far from frivolous. The Consolidated Amended Complaint includes over 400 pages of detailed allegations regarding the purported misdeeds of Royal Ahold and USF, among others. Many of its claims are supported by quotations or citations from documentary evidence—indeed, Royal Ahold's own press statements and SEC filings admit major missteps, if not actual fraud. It would be premature, of course, to prejudge the outcome of a motion to dismiss, and the plaintiffs still bear the burden of establishing a need for discovery. Nevertheless, the apparent strength of the plaintiffs' case may factor in the court's determination of the necessity of discovery under the PSLRA.

With this background in mind, the plaintiffs' showing of necessity to preserve evidence appears substantial, at least as to discovery from Royal Ahold. Royal Ahold appears to be undertaking a wide-ranging corporate reorganization. It has already divested itself of key subsidiaries, and it plans to divest itself of more—including some, such as Disco, that allegedly played central roles in the company's purported fraud.[12] These divestitures create a reasonable concern that documents may be lost despite Royal Ahold's best efforts to preserve them. The materials at risk are, admittedly, not the documents at issue in the plaintiffs' motion: materials produced to outside agencies will, presumably, be preserved by those agencies. Nevertheless, the divestitures add urgency to the discovery timetable, and discovery of the previously produced documents, which are likely to comprise the most critical evidence in the case, could help the plaintiffs identify other specific materials that may be at risk of loss. Faced with a shifting corporate landscape and concerns about evidentiary loss that are by no means "wholly speculative," *CFS–Related Sec. Fraud Litig.,* 179 F.Supp.2d 1260, 1265 (N.D.Okl.2001), the plaintiffs are not required to rely on the assurances of counsel that relevant evidence will be preserved.[13] The PSLRA permits them to seek discovery to aid their efforts to preserve the evidence for themselves.

The most compelling reason for allowing the discovery, however, is the risk of undue prejudice to the lead securities plaintiffs. This rationale applies not only to Royal Ahold, but also to USF. As the lead plaintiffs observe, Royal Ahold and USF are the target of numerous civil and criminal actions, none of which, save the securities claims, are subject to the PSLRA discovery stay. Indeed, the ERISA plaintiffs included in this very litigation are prepared to proceed with discovery, and there is no indication that Congress intended to extend the discovery stay to them.[14] *See, e.g., WorldCom,* 234

---

**12.** Citing to Royal Ahold press releases as authority, the lead plaintiffs' brief lists numerous assets of which Royal Ahold has divested or plans to divest itself. (Pl.'s Mem. at 22–26.)

**13.** Indeed, at the hearing on March 5, 2004, counsel for Royal Ahold indicated that while he was willing to work with plaintiffs' counsel to develop satisfactory document preservation arrangements, he would not identify what categories of evidence, in his estimation, were relevant, for fear of exposing his client's theory of the case. This reluctance, however reasonable, only

reinforces the plaintiffs' argument that the defendants' preservation efforts may not be an adequate substitute for discovery aimed at revealing the case's key facts to the lead plaintiffs.

**14.** Citing the unpublished opinion *In re AOL Time Warner, Inc. Securities and "ERISA" Litigation,* MDL No. 1500, Civ. No. 02–8853(SWK), 2003 WL 22227945 (S.D.N.Y. Sept. 26, 2003), Royal Ahold argues that "[t]he PSLRA does not provide an exception for ERISA plaintiffs." (Royal Ahold Opp'n at 11.) The statute does not need to provide such an exception because it

F.Supp.2d at 305–06 (noting ERISA plaintiffs would be receiving discovery notwithstanding the PSLRA stay); *Tobias Holdings, Inc. v. Bank United Corp.,* 177 F.Supp.2d 162, 164–65 (S.D.N.Y.2001) (concluding that securities plaintiffs could seek discovery on related state law claims notwithstanding the PSLRA). Nor would it be sensible to limit the ERISA plaintiffs to "ERISA-specific" discovery, as Royal Ahold proposes, considering that the ERISA claims involve allegations of wide-ranging fraud similar to those stated in the securities plaintiffs' complaint.[15] Without access to key documents that have already been produced to government investigators and that soon will be produced to the ERISA plaintiffs, the securities plaintiffs could suffer a severe disadvantage in formulating their litigation and settlement strategy—particularly if the parties proceed quickly to settlement negotiations, as the court has urged them to do. Royal Ahold's divestitures, again, add urgency to this concern, as delay in the resolution of the securities' plaintiffs claims could limit their chances of recovery relative to other parties with claims of comparable, or even lesser, merit. For all these reasons, it appears that delay in discovery of the key evidence the plaintiffs have requested could cause them undue prejudice within the meaning of the PSLRA.

Adding weight to this conclusion is the fact that another district judge recently found undue prejudice in closely analogous circumstances. In the *WorldCom* litigation, Judge Cote of the Southern District of New York lifted the PSLRA stay to permit discovery of materials produced to external regulators by a bankrupt corporation suspected of fraudulent accounting, much as Royal Ahold is here. Noting that other civil and criminal proceedings were "moving apace," Judge Cote reasoned that denying access to key documents

in the hands of other litigants could cause undue prejudice to the lead securities plaintiff due to "its inability to make informed decisions about its litigation strategy in a rapidly shifting landscape." *WorldCom,* 234 F.Supp.2d at 305. I find Judge Cote's reasoning persuasive in this context. While settlement discussions are not as imminent as in *WorldCom,* I have urged the parties to make settlement an early priority. Here, too, other proceedings are "moving apace," and Royal Ahold's aggressive divestitures, rather like WorldCom's bankruptcy, create a risk that delay may limit recovery or hinder production of evidence, at least as to that defendant. Furthermore, this case involves a complaint that appears to have substantial support based on the defendants' own statements—a complaint, in other words, that implicates "[n]either rationale underlying the PSLRA's discovery stay provision." *Id.* at 305.

In sum, COPERA and Generic have adequately demonstrated that the discovery they are seeking from Royal Ahold and USF is necessary to prevent undue prejudice, if not also to preserve evidence. Their request, moreover, is adequately particularized in light of the scale and nature of the underlying litigation. Holding aside, for the moment, the government's concerns about releasing the investigative reports, it therefore appears appropriate to lift the PSLRA stay and allow the discovery the plaintiffs have requested as to those two defendants.

## C. Discovery as to Deloitte & Touche

■ The case for discovery from Deloitte & Touche is not as compelling. That defendant, unlike Royal Ahold, is not reorganizing its affairs, so there is little to suggest a risk

---

does not cover ERISA claims in the first place. *See* 15 U.S.C. § 78u–4(a)(1) (defining the statute's coverage as comprising plaintiff class actions arising under the Securities Exchanges chapter of the United States Code). While I agree with Judge Kram that I have discretion to stay the ERISA discovery for good cause, the PSLRA does not require such a stay.

**15.** The court recognizes that coordination between the securities and ERISA plaintiffs may require some discovery to be delayed. It would

not be appropriate, for example, for the ERISA plaintiffs to proceed with depositions before the securities plaintiffs are free to participate. By the same token, however, it would be inefficient to postpone all participation by the securities plaintiffs in the discovery the ERISA plaintiffs will be conducting. Thus, absent some persuasive reason to bar all ERISA discovery, the presence of the ERISA plaintiffs in this litigation supports a coordinated reprieve from the PSLRA stay with respect to the securities plaintiffs.

of documentary loss.[16] While it is possible that discovery from Deloitte & Touche could help identify documents in other parties' hands that are in need of preservation, the one million pages of documents to be produced by Royal Ahold will most likely be sufficient in that regard. As to undue prejudice, it is true that other litigants may seek discovery from Deloitte & Touche notwithstanding the PSLRA, just as they may from Royal Ahold and USF,[17] yet the strength of the securities plaintiffs' case against Royal Ahold's accountants is not as apparent, making it less appropriate to lift the stay in light of the PSLRA's purposes. Unlike Royal Ahold, Deloitte & Touche has made no statement that could be construed as an admission of any wrongdoing; indeed, counsel for Deloitte & Touche characterizes the firm as more a victim than a perpetrator, and maintains that its motion to dismiss will have substantial merit. Finally, as a practical matter, the discovery from Royal Ahold and USF is likely to include documents relating to Deloitte & Touche, permitting the plaintiffs to develop their case against the accountants without the need for discovery directly from the firm. For all these reasons, the court will not grant the plaintiffs' request to lift the PSLRA stay as to Deloitte & Touche at this time.

## II. The Government's Motion

Without objection from any party at the hearing on March 5, 2004, the court granted the government's application to intervene. The parties have also agreed to respect the government's request to withhold discovery of witness statements and interview notes pending completion of the government's criminal investigation of Royal Ahold and associated individuals and entities. The dispute, therefore, is limited to the government's request that discovery of investigative reports also be postponed. For the reasons that follow, the court will grant the government's motion and delay discovery of this evidence for a reasonable period.

The government's request to stay discovery requires the court to consider multiple factors including: "(1) the extent to which the issues in the criminal case overlap with those in the civil case; (2) the status of the criminal case including whether the defendants have been indicted; (3) the private interest of the plaintiffs in proceeding expeditiously with the civil litigation; (4) the private interests of, and the burden on, the defendant; (5) the interest of the courts; and (6) the public interest." *Javier H. v. Garcia–Botello,* 218 F.R.D. 72, 74 (W.D.N.Y.2003); *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.,* 7 F.Supp.2d 523, 526–27 (D.N.J.1998); *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.,* 886 F.Supp. 1134, 1139 (S.D.N.Y.1995); *see also Bureerong v. Uvawas,* 167 F.R.D. 83, 87 (C.D.Cal. 1996) (applying a similar five-factor test); *United States v. Any & All Assets of that Certain Bus. Known as Shane Co.,* 147 F.R.D. 99, 101 (M.D.N.C.1992) (indicating the need to balance the interests of the government against those of the civil claimants). Here, the civil and criminal suits appear to involve similar issues and allegations. Although the lack of any indictments to date weakens the government's case for the stay, *see, e.g., Transworld Mech.,* 886 F.Supp. at 1139–40; *Walsh Sec.,* 7 F.Supp.2d at 527–29; *SEC v. Dresser Indus., Inc.,* 628 F.2d 1368, 1376 (D.C.Cir.1980), the government's request is "presumptively reasonable, nothing else appearing." *Shane Co.,* 147 F.R.D. at 101. In addition, as was noted earlier the burden of production on the defendants should be relatively slight in this case because the requested materials have been produced already to other parties. As to the public interest in criminal prosecution, the chief concern is the risk that civil discovery "may afford defendants an opportunity to gain evidence to which they are not entitled

---

**16.** Indeed, in their argument regarding the need to preserve evidence, the plaintiffs focus almost exclusively on Royal Ahold, making little mention of Deloitte & Touche. (*See* Pl.'s Mem. at 44–46.)

**17.** Because the ERISA plaintiffs apparently have yet to serve their complaint on any Deloitte & Touche entity, the court will reserve a decision as to what, if any, ERISA discovery should be postponed in light of the court's decision to deny discovery of Deloitte & Touche documents to the securities plaintiffs.

under the governing criminal discovery rules." *Twenty First Century Corp. v. LaBianca*, 801 F.Supp. 1007, 1010 (E.D.N.Y.1992); *see also Javier H.*, 218 F.R.D. at 75; *SEC v. Doody*, 186 F.Supp.2d 379, 381–82 (S.D.N.Y. 2002); *Bureerong*, 167 F.R.D. at 87; *Transworld Mech.*, 886 F.Supp. at 1139. In this case, the government's interest relates not to the corporate defendants—Royal Ahold, USF, and Deloitte & Touche—which presumably have access already to the documents they would be producing, but rather to the individual defendants, some of whom, the government suggests, may be subjects of the criminal investigation. These individuals would not ordinarily have access to reports of internal or governmental investigations under the rules of criminal discovery. *See* Fed. R.Crim.P. 16(a)(2); *United States v. Rigas*, 258 F.Supp.2d 299, 301, 306–07 (S.D.N.Y. 2003) (citing *United States v. Reddy*, 190 F.Supp.2d 558, 572–73 (S.D.N.Y.2002)). While a court order granting access to the reports to the plaintiffs' attorneys only, as the plaintiffs have proposed, could prevent the individual defendants from viewing the reports directly, the government worries that use of the reports to prepare the plaintiffs' litigation and settlement strategy could nonetheless expose aspects of the government's case against the defendants, increasing the risk of fabricated evidence or a defense tailored to the government's proof.

The two remaining factors—the interests of the civil plaintiffs and the interests of the court—place significant weight on the other side of the balance. Access to the reports could, as the lead plaintiffs put it, provide a "road map" of discovery, streamlining their efforts to identify key evidence amid the reams of documents to be produced by the defendants. As for judicial economy, the court has a not insubstantial interest in facilitating early settlement of this case, and discovery could advance the parties toward that goal. Nevertheless, it does not appear that a limited delay in releasing the reports will cause significant harm to the parties or the court. As the government observed at the hearing, the plaintiffs will need to review the individual documents, regardless of whether they receive the reports. Royal Ahold must also review the requested documents for privilege, with the consequence that production is not anticipated to be complete until approximately late May. Given these inherent delays, the government's interests appear strong enough to justify postponing discovery of the reports. The court will return to this issue at a later date, by which time the government may be positioned to request narrower limitations on discovery or provide more specific reasons in support of a continued stay.

## III. Conclusion

For the reasons stated above, the court will grant the lead securities plaintiffs' motion to the extent necessary to permit discovery of materials produced to outside agencies by Royal Ahold and USF. The court will not permit discovery from Deloitte & Touche at this time, nor will it allow release of the reports generated by the defendants' internal investigations. The court may reconsider these issues at a later date after the discovery allowed by this Memorandum and Order has advanced.

A separate Order follows.

### *ORDER*

For the reasons stated in the accompanying Memorandum, it is hereby Ordered that:

1. the motion of the Public Employees' Retirement Association of Colorado ("COP-ERA") and Generic Trading of Philadelphia, LLC ("Generic") for an order partially lifting the Private Securities Litigation Reform Act discovery stay (docket no. 85) is **GRANTED in part and DENIED in part** as stated in the accompanying Memorandum;

2. the application of the United States government to intervene (docket no. 112) is **GRANTED**;

3. the government's motion to partially continue the current stay of discovery in the securities action, to impose a partial stay of discovery in the ERISA action, and to seal its memorandum of law and declaration in support (docket no. 112) is **GRANTED in part** as stated in the accompanying Memorandum;

4. the government's memorandum of law and declaration in support of its motion (docket no. 112) shall be **SEALED**;

5. discovery of the investigative reports generated by the defendants' internal investigations shall be **DENIED** as to all plaintiffs at this time;

6. a request by the government to continue the stay as to investigative reports, if warranted, is due on **June 14, 2004**;

7. the following documents shall be **PRODUCED** to counsel for COPERA and Generic by Royal Ahold, N.V., Ahold USA, Inc., and Ahold USA Holdings, Inc. (collectively, "Royal Ahold"), and U.S. Foodservice, Inc. ("USF") no later than **May 28, 2004**: all documents and materials that Royal Ahold or USF have produced or provided in connection with inquiries or investigations by governmental, regulatory, or self-regulatory agencies with regard to Royal Ahold's or USF's accounting practices or business affairs from January 1, 1998 through the present (excluding all witness statements, interview notes, and internal investigative reports), including documents and materials produced or provided to any of the following entities:

(a) any committee or agency of the legislative branch of the United States government;

(b) any department or agency of the executive branch of the United States government (including but not limited to the Department of Labor and the Department of Justice);

(c) any United States Attorney's Office (including but not limited to the United States Attorney's Office for the Southern District of New York);

(d) the United States Securities and Exchange Commission ("SEC");

(e) the New York Stock Exchange ("NYSE");

(f) the National Association of Securities Dealers ("NASD");

(g) the Office of the Dutch Public Prosecutor;

(h) the Euronext Amsterdam Exchange;

(i) the Dutch Authority for Financial Markets; and

(j) any other governmental, regulatory, or self-regulatory agency;

8. copies of this Order and the accompanying Memorandum shall be **SENT** to counsel of record.