**Atsushi MORI, et al., Plaintiffs,**

v.

**Mamoru SAITO, et al., Defendants.**

**No. 10 Civ. 6465(BSJ)(GWG).**

United States District Court, S.D. New York.

Aug. 11, 2011.

Garth Devon Goldberg, Rostami Law LLC, Florence Rostami, Florence Rostami, Law Offices, New York, NY, for Plaintiffs.

Martin H. Kaplan, Brian Dale Graifman, Gusrae, Kaplan, Bruno & Nusbaum, PLLC, Michael Fred Bachner, Scott

James Splittgerber, Bachner & Associates, P.C., New York, NY, Michael Patrick Gilmore, Sims Moss Kline & Davis LLP, Mineola, NY, for Defendants.

## OPINION AND ORDER

GABRIEL W. GORENSTEIN, United States Magistrate Judge.

A number of plaintiffs have brought this action pursuant to the Securities Act of 1933, the Securities Exchange Act of 1934, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, seeking damages relating to the loss of approximately $11.4 million in an alleged fraudulent investment scheme. Plaintiffs have now moved to lift the automatic stay of discovery effectuated by section 21(D)(b)(3)(B) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4(b)(3)(B), in order to issue three subpoenas. Certain defendants—Takahito Sakagami, Amiworld, Inc. ("Amiworld"), EBOA, Ltd. ("EBOA"), JASB of New York Corporation, ODIN Energy N.Y. Corporation, ODIN Petroleum Corporation, Tetsuya Hashikura, Hiromi Hashikura, Tukuyomi Corporation, and Rumiko Termyna (collectively, the "defendants")—have opposed this motion.[1] For the reasons stated below, plaintiffs' motion to lift the discovery stay as to these subpoenas is denied.

## I. BACKGROUND

### A. The Allegations of the Complaint

Plaintiffs allege that defendants Mamoru Saito, Takahito Sakagami, and their accomplices and agents "created and maintained a fraudulent investment scheme, preying upon mostly Japanese residents of the U.S. with minimal investment experience." First Amended Complaint, filed Feb. 14, 2011 (Docket # 8) ("Am. Compl.") at 2 ¶ 1. According to the amended complaint, Saito and Sakagami created two clusters of entities—one involved with oil and the other with financial services. *Id.* at 2–3 ¶ 1. They then "offered securities of these entities and investments in funds operated by these entities" to plaintiffs and other investors. *Id.* at 3 ¶ 1. The defendants offered plaintiffs "stellar returns such as 35% to 50% for one year investments, often with principal guaranteed." *Id.* Defendants attracted investors through advertising and Saito and Sakagami hired agents, including the Hashikuras and Termyna, from within the Japanese community, to promote the investment opportunity to neighbors and colleagues. *Id.* at 3 ¶ 2.

In order to carry out this scheme, Saito and Sakagami organized numerous companies (including Amiworld and ODIN Energy N.Y. Corporation), offshore banks (including Bank of the Atlantic, Ltd. ("BOA")), and other financial institutions (including EBOA), which were all wholly owned and controlled by these two defen-

---

1. *See* Notice of Motion to Lift Discovery Stay, filed June 10, 2011 (Docket # 62); "Plaintiffs['] Memorandum of Law in Support of Motion to Lift Discovery Stay," filed June 10, 2011 (Docket # 65) ("Pl. Mem."); Declaration of Garth Goldberg in Support of Motion to Lift Discovery Stay, filed June 10, 2011 (Docket # 66); Hashikura Defendants' Memorandum in Opposition to Plaintiffs' Motion to Lift the Stay of Discovery, filed June 23, 2011 (Docket # 72); "Memorandum of Law of Cer-

tain Defendants in Opposition to Plaintiff's Motion to Lift Disvovery [sic] Stay," filed June 24, 2011 (Docket # 73); Declaration of Brian D. Graifman, filed June 24, 2011 (Docket # 75); Rumiko Termyna's Memorandum of Law in Opposition to Plaintiffs' Motion to Lift Stay of Discovery, filed June 24, 2011 (Docket # 76); Plaintiffs' Reply Memorandum in Support of Motion to Lift Discovery Stay, filed July 1, 2011 (Docket # 77) ("Pl. Reply").

dants. *Id.* at 1, 3 ¶ 3. Saito and Sakagami sold securities of Amiworld, ODIN Energy, and Great Voyages to plaintiffs and deceived plaintiffs into believing that the securities would be listed on NASDAQ and appreciate five to ten times, when they knew that this would not be possible. *Id.* at 3 ¶ 3.

Pursuant to various investment agreements with defendants, plaintiffs were required to open an account with BOA and deposit $1,000. *Id.* at 4 ¶ 5. Plaintiffs were informed that the returns on their investments would be deposited into this BOA account. *Id.* Defendants "created the impression that investment returns would be certain." *Id.* at 4 ¶ 6. In some instances, European Bo Atlantic Trust, Ek For and EUBK Trust, Ek For, *id.* at 2, purportedly independent credit unions, guaranteed the invested money, *id.* at 4 ¶ 6. However, these credit unions "were not independent at all, but where, in fact, sham institutions—all under the same umbrella of ownership by Defendants Saito and Sakagami." *Id.*

"Plaintiffs and other investors were directed to pay *all* monies for the purchase of securities or investments in various funds over to EBOA." *Id.* at 4 ¶ 7 (emphasis in original). But "not one cent of either these invested monies, or the purported returns on the monies, was ever actually transferred to BOA." *Id.* At first, investors were able to transfer money from their BOA accounts into their personal bank accounts. *Id.* at 5 ¶ 8. However, "after about a year the Plaintiffs and other investors could not withdraw any of the funds." *Id.* at 5 ¶ 9. Defendants have refused to return plaintiffs' invested funds. *Id.* at 7 ¶ 15.

### B. *Procedural History*

The original complaint in this action was filed on August 30, 2010, on behalf of a number of plaintiffs. *See* Complaint, filed Aug. 30, 2010 (Docket # 1). An amended complaint was filed on February 14, 2011. *See* Am. Compl. On or about April 20, 2011, plaintiffs served three third-party subpoenas directed to J.P. Morgan Chase Bank, Deutsche Bank, and Tokyo Mitsubishi Bank, and requested compliance by May 20, 2011. *See* Pl. Mem. at 6, 7. Plaintiffs' counsel also issued a subpoena to David Garin, the claimed Chief Financial Officer of Amiworld, though that subpoena is not at issue on this motion. *Id.* at 6–7. In May, various sets of defendants filed motions to dismiss the complaint on a number of grounds (Docket ## 44, 51, 54). These motions are now fully briefed and pending before Judge Barbara S. Jones.

### II. *APPLICABLE LAW*

■ The PSLRA provides that in a securities fraud action, "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u–4(b)(3)(B). The automatic stay provision establishes "a mandatory stay on discovery pending judicial determination of the legal sufficiency of the claims." *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 32 (2d Cir.2005) (citations and footnote omitted), *overruled on other grounds by* 547 U.S. 71, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006).

■ A request is considered "particularized" for purposes of the PSLRA when " 'it is directed at specific persons' " and " 'identifies specific types of evidence that fall within its scope.' " *Fisher v. Kanas*, 2006 WL 2239038, at *2 (E.D.N.Y. Aug. 4, 2006) (quoting *In re Tyco Int'l, Ltd. Sec. Litig.*, 2000 WL 33654141, at *4, 2000 U.S. Dist. LEXIS 11659, at *12 (D.N.H. July 27, 2000)); *see also Waldman v. Wachovia*

*Corp.*, 2009 WL 86763, at *1 (S.D.N.Y. Jan. 12, 2009) ("A string of requests, even a string of individually particularized requests—is not sufficiently particularized at the outset."); *In re WorldCom, Inc. Sec. Litig.*, 234 F.Supp.2d 301, 306 (S.D.N.Y. 2002) (the stay will only be lifted on a "clearly defined universe of documents"). " 'A party alleging that discovery is necessary to preserve evidence must ... make a specific showing that the loss of evidence is imminent as opposed to merely speculative.' " *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F.Supp.2d 129, 130 (S.D.N.Y. 2003) (omission in original) (quoting *Sarantakis v. Gruttadauria*, 2002 WL 1803750, at *2 (N.D.Ill. Aug. 5, 2002)) (internal quotation marks and additional citation omitted); *see Lindner v. Am. Express Co.*, 2010 WL 4537819, at *2 (S.D.N.Y. Nov. 9, 2010).

▮▮▮▮ While the Second Circuit has not addressed what a plaintiff must show to establish "undue prejudice" in the context of the PSLRA, district courts have interpreted the term to mean "improper or unfair treatment amounting to something less than irreparable harm." *In re Bank of Am. Corp. Sec., Derivative & Emp't Ret. Income Sec. Act Litig.*, 2009 WL 4796169, at *2 (S.D.N.Y. Nov. 16, 2009) (internal quotation marks and citation omitted); *accord Brigham v. Royal Bank of Can.*, 2009 WL 935684, at *1 (S.D.N.Y. Apr. 7, 2009); *380544 Can., Inc. v. Aspen Tech.*, 2007 WL 2049738, at *1 (S.D.N.Y. July 18, 2007); *In re Smith Barney Transfer Agent Litig.*, 2006 WL 1738078, at *2 (S.D.N.Y. June 26, 2006). Courts "have partially lifted the discovery stay on the ground of 'undue prejudice' when defendants would be unfairly shielded from liability through pursuit of their pending action or when plaintiffs would be placed at an unfair advantage to make informed decisions about litigation and settlement strategy without access to documents that form the core of the proceeding." *Fisher*,

2006 WL 2239038, at *2 (additional internal quotation marks and citations omitted); *see In re WorldCom*, 234 F.Supp.2d at 305–06 (S.D.N.Y.2002) (partially lifting the stay to avoid prejudice where plaintiffs were competing with other related actions and forced to engage in global settlement discussions). Undue prejudice does not arise, however, "from a delay in the gathering of evidence" because this "delay is an inherent part of every stay of discovery required by the PSLRA." *In re Smith Barney*, 2006 WL 1738078, at *2 (internal quotation marks and citations omitted).

## III. DISCUSSION

### A. Particularized Discovery

▮▮▮▮ Plaintiffs seek to permit discovery arising from three subpoenas directed to third parties J.P. Morgan Chase Bank, Deutsche Bank, and Tokyo Mitsubishi Bank. *See* Pl. Mem. at 1; Pl. Reply at 5. The subpoenas attached to plaintiffs' memorandum of law do not provide any information regarding the records sought from these non-parties, however. *See* Deposition Notice and Subpoena Directed to J.P. Morgan Chase Bank (annexed as Ex. F to Pl. Mem.); Deposition Notice and Subpoena Directed to Deutsche Bank Trust Company America (annexed as Ex. G to Pl. Mem.); Deposition Notice and Subpoena Directed to Mitsubishi UFJ Financial Group, Inc. (annexed as Ex. H to Pl. Mem.). Plaintiffs state in their memoranda that they seek only the records of the EBOA accounts at J.P. Morgan Chase Bank, Deutsche Bank, and Tokyo Mitsubishi Bank. *See* Pl. Mem. at 7, n. 11; Pl. Reply at 2, 5. They do not specify what years or what particular documents are sought.

An "Exhibit A" referenced in each of the subpoenas, and that apparently contains a listing of the documents sought, has not been provided to the Court. It is probable

that such a listing would allow the "particularized discovery" threshold to be met. Indeed, assuming the subpoenas are limited to the bank records of a sufficiently narrow time and scope, this case would be a far cry from *Mishkin v. Ageloff,* 220 B.R. 784 (Bankr.S.D.N.Y.1998), cited to by defendants, in which "[t]he items of discovery sought ... encompass[ed] an open-ended, boundless universe of discovery," *id.* at 793. On the present record, however, it is impossible to make such a finding. Accordingly, the motion must be denied on this basis alone.

Even assuming, *arguendo,* that plaintiffs had made the required showing that their requests are "particularized," their motion would still fail as they have not shown that the discovery sought is "necessary to preserve evidence or to prevent undue prejudice," 15 U.S.C. § 78u–4(b)(3)(B), as is described next.

### B. *Preservation of Evidence*

■ As stated above, "[a] party alleging that discovery is necessary to preserve evidence must ... make a specific showing that the loss of evidence is imminent as opposed to merely speculative." *In re Vivendi Universal,* 381 F.Supp.2d at 130 (omission in original) (internal quotation marks and citations omitted). Plaintiffs assert that destruction of evidence in this case is ongoing. *See* Pl. Reply at 4, 7; Pl. Mem. at 5. But their only showing on this front is with respect to actions of the defendants, not the three banks that are the subject of the subpoenas. *See* Pl. Reply at 4, 7, 9; Pl. Mem. at 5. Thus, plaintiffs have not met their burden to show that the loss of evidence sought by the subpoenas is imminent. *See, e.g., Rampersad v. Deutsche Bank Sec. Inc.,* 381 F.Supp.2d 131, 132 (S.D.N.Y.2003) (finding discovery was not necessary to preserve evidence where plaintiff "failed to show any relevant ongoing record keeping violations" and to "demonstrate[ ] that any relevant existing records [we]re at risk of being destroyed").

### C. *Undue Prejudice*

■ We now turn to the question of whether plaintiffs have shown that they will suffer "undue prejudice" if the stay is not lifted as to the three subpoenas. As discussed above, district courts have interpreted "undue prejudice" in the context of the PSLRA to mean "improper or unfair treatment amounting to something less than irreparable harm." *In re Bank of Am.,* 2009 WL 4796169, at *2 (internal quotation marks and citations omitted). Courts have lifted the stay based on "undue prejudice" where the defendant is insolvent or where plaintiffs may be left at a disadvantage because other actions involving the defendant are moving ahead with discovery. *See, e.g., id.* at *3 (lifting the stay where "[d]iscovery [wa]s moving apace in parallel litigation" and, "[w]ithout access to documents produced in these other proceedings, plaintiffs ... w[ould] be unduly prejudiced and w[ould] be less able to make informed decisions about litigation strategy"); *In re WorldCom,* 234 F.Supp.2d at 305–06 (lifting stay where defendant was insolvent and other investigations and proceedings were "moving apace"); *cf. Brigham,* 2009 WL 935684, at *2 (finding no "undue prejudice" where the defendant was not insolvent and where there was no risk that plaintiff would be left at a disadvantage in settlement compared to government regulators or other plaintiffs); *In re Vivendi Universal,* 381 F.Supp.2d at 130–31 (no "undue prejudice" absent a showing of exceptional circumstances that would potentially leave plaintiffs unable to recover, such as bankruptcy or other ongoing settlement negotiations).

Here, the plaintiffs' submissions are insufficient to allow the Court to make any finding that they will be spared prejudice by enforcement of the subpoenas. Plain-

tiffs make reference to their interest in finding out the names of other individuals who have invested with the defendants, see Pl. Mem. at 1; see also Pl. Reply at 4 ("[d]efendants continue to bring in new victims through their schemes"), but do not explain why a delay in obtaining this information will cause the existing plaintiffs undue prejudice with respect to their own claims.

Plaintiffs also contend that the discovery at issue is necessary "to find out, at the outset, where their millions of dollars went in this scheme." Pl. Mem. at 14; see Pl. Mem. at 1, 15; Pl. Reply at 7–8. But they simply do not explain what information these particular subpoenas can be expected to generate or how failing to find out the answer to the question of where the funds went will cause them undue prejudice. *See, e.g., In re Smith Barney*, 2006 WL 1738078, at *2 (undue prejudice does not arise "from a delay in the gathering of evidence or the development of settlement or litigation postures" because this "delay is an inherent part of every stay of discovery required by the PSLRA") (internal quotation marks and citations omitted).

Plaintiffs make reference to their desire to obtain evidence to obtain a pre-judgment attachments against the defendants, but plaintiffs have not provided admissible evidence regarding the allegations of fraudulent conduct, how the information sought relates to the evidence regarding fraud, and how this evidence fits into a chain of evidence that would otherwise support the granting of pre-judgment attachments. The Court notes that the evidence marshaled by plaintiffs consists largely of allegations in the unsworn amended complaint or in an attorney affidavit that is not based on personal knowledge of the fraudulent scheme. Importantly, "[m]ere speculation about highly contingent possibilities of future prejudice does not demonstrate that lifting the stay

is necessary . . . to prevent undue prejudice that would otherwise result." *380544 Canada, Inc.*, 2007 WL 2049738, at *3 (citing *In re Refco*, 2006 WL 2337212, at *3 (S.D.N.Y. Aug. 8, 2006)) (internal quotation marks and additional citation omitted).

This case does not involve a situation such as occurred in *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246 (D.Md.2004), cited to by plaintiffs in support of the motion, see Pl. Mem. at 12, in which the court found that plaintiffs would suffer undue prejudice without a lifting of the stay because defendants were targets of numerous ongoing civil and criminal government actions, not subject to an automatic stay, *id.* at 251–52. The ongoing actions in *Royal Ahold* were likely to settle, thus limiting the chance of recovery for plaintiffs in the private action. *Id.* at 252. While plaintiffs here argue that without discovery they "will have no chance of recovering their money," see Pl. Reply at 3, there is no indication that the discovery stay will hinder plaintiffs from competing with non-PSLRA plaintiffs for defendants' funds. *Cf. In re Bank of Am.*, 2009 WL 4796169, at *3; *In re WorldCom*, 234 F.Supp.2d at 305–06.

### D. *Plaintiffs' Additional Arguments*

 Plaintiffs identify three additional reasons why the automatic stay should be lifted. They argue (1) that they are likely to prevail on the motions to dismiss, see Pl. Mem. at 8–9, (2) that the purpose of the PSLRA's discovery stay does not apply in this case, see Pl. Mem. at 9–11, and (3) that there is no burden imposed on the defendants from the requested discovery because the discovery is sought from non-parties, see Pl. Mem. at 11–12. All these arguments must be rejected. First, the statute does not provide that the strength of plaintiffs' case has any bearing on the question of lifting the automatic stay. *See* 15 U.S.C. § 78u–4(b)(3)(B); *see also Brigham*, 2009 WL

935684, at *2 ("This Court may lift the stay only if doing so is necessary to preserve evidence or prevent undue prejudice.") (internal quotation marks and citations omitted); *380544 Can., Inc.*, 2007 WL 2049738, at *2 (same) (citing 15 U.S.C. § 78u–4(b)(3)(B)). Second, "the mere fact that the PSLRA's goals would not be frustrated by the lifting of the stay ... is not sufficient to warrant" such a lifting. *380544 Can., Inc.*, 2007 WL 2049738, at *2; *accord Brigham*, 2009 WL 935684, at *2. Third, the PSLRA makes no distinction between discovery sought from non-parties as opposed to parties. *See* 15 U.S.C. § 78u–4(b)(3)(B); *accord Fisher*, 2006 WL 2239038, at *2 ("To the extent that this statute prohibits discovery of parties, it bars discovery of non-parties as well.") (citation omitted); *Faulkner v. Verizon Commc'ns, Inc.*, 156 F.Supp.2d 384, 404 (S.D.N.Y.2001) ("the PSLRA does not distinguish between discovery of nonparties and parties") (citing *Powers v. Eichen*, 961 F.Supp. 233, 235 (S.D.Cal.1997) ("By its language, the Reform Act addresses 'all discovery' with no distinction between that sought from nonparties as opposed to parties.") (citation omitted)) (additional citation omitted). Indeed, courts have specifically recognized that the absence of burden on the defendant should not be considered. *See In re Smith Barney*, 2006 WL 1738078, at *3 ("The proper inquiry under the PSLRA is whether the plaintiff would be unduly prejudiced by the stay, not whether the defendant would be burdened by lifting the stay.").

IV. *CONCLUSION*

For the foregoing reasons, plaintiffs' motion to lift the automatic stay of discovery (Docket # 62) is denied.