Merle DAVIS and Donald Weilersbacher, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

DUNCAN ENERGY PARTNERS L.P., W. Randall Fowler, Bryan F. Bulawa, William A. Bruckmann, III, Larry J. Casey, Richard S. Snell, DEP Holdings, LLC, and Enterprise Products Partners L.P., Defendants.

Civil Action No. H–11–2486.

United States District Court,
S.D. Texas,
Houston Division.

Aug. 10, 2011.

Joe Kendall, Kendall Law Group, LLP, Dallas, TX, Stephen J. Oddo, Robbins Umeda LLP, San Diego, CA, for Plaintiffs.

Layne Edwin Kruse, Darryl Wade Anderson, Fulbright & Jaworski, Karl S. Stern, Kenneth P. Held, Vinson & Elkins, Michael Hendryx, Strong Pipkin et al., Houston, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

SIM LAKE, District Judge.

Plaintiffs, Merle Davis and Donald Weilersbacher, on behalf of themselves and all others similarly situated, bring this action against Duncan Energy Partners L.P. (Duncan Energy), Duncan Energy's general partner DEP Holdings, LLC (DEP), Enterprise Products Partners L.P. (Enterprise), and members of Duncan Energy's Board of Directors (Duncan Energy Board) who manage and operate Duncan Energy (the Individual Defendants),[1] for violations of § 14(a) and § 20(a) of the Securities Exchange Act of 1934 and Rule 240.14a–9 promulgated thereunder, and for breach of express and implied contractual duties (Docket Entry No. 1). Pending before the court are Plaintiffs' Motion for Expedited Discovery Under Rule 26(d) of the Federal Rules of Civil Procedure (Docket Entry No. 3), and Motion for Expedited Hearing on Plaintiffs' Motion for Expedited Discovery Under Rule 26(d) of the Federal Rules of Civil Procedure (Docket Entry No. 4). For the reasons explained below, plaintiffs' motion for expedited discovery will be denied, and plaintiffs' motion for expedited hearing will be declared moot.

### I. Plaintiffs' Allegations

Plaintiffs allege that Enterprise's initial offer to acquire Duncan Energy was made public on February 23, 2011. On April 15, 2011, Duncan Energy's Audit, Conflicts, and Governance Committee (ACG Committee) presented a counteroffer to Enterprise. Negotiations continued until April 28, 2011, when an agreement was reached, and on April 29, 2011, a press release was issued announcing the agreed terms of the Proposed Acquisition. Pursuant to the agreement, Duncan Energy unitholders are to receive 1.010 common units of Enterprise for each common unit of Duncan Energy they own. Based on Duncan Energy's closing price on April 28, 2011, the Proposed Consideration has an implied value of $43.82, representing a 7.56% premium.[2]

Plaintiffs allege that on May 18, 2011, the Individual Defendants caused to be filed with the Securities Exchange Commission (SEC), a materially misleading Form S–4 Registration Statement,[3] and that the Individual Defendants breached both express and implied contractual obligations of the Amended and Restated Agreement of Limited Partnership of Duncan Energy dated February 5, 2007, and all subsequent amendments thereto (LPA) by failing to maximize the value potentially available to Duncan Energy's unitholders.[4] Plaintiffs allege that the remaining defendants aided and abetted the Individual Defendants.[5]

Plaintiffs seek to enjoin the unitholder vote on the Proposed Acquisition set for September 7, 2011, based on allegations that (1) the offered per unit payment does not adequately compensate Duncan Energy unitholders, (2) the Individual Defendants agreed to the Proposed Acquisition through an unfair process involving preclusive deal protections, and (3) the Form S–4 filed with the SEC contains material omis-

---

1. The Individual Defendants are: W. Randall Fowler, Bryan F. Bulawa, William A. Bruckmann, III, Larry J. Casey, Richard S. Snell.

2. Complaint for Violations of § 14(a) and § 20(a) of the Securities Exchange Act of 1934 and Rule 240.14a–9 of the U.S. Securities and Exchange Commission Promulgated Thereunder and for Breach of Express and Implied Contractual Duties (Plaintiffs' Complaint), Docket Entry No. 1, ¶¶ 21–29.

3. *Id.* at ¶¶ 32–40, 89–102.

4. *Id.* at ¶¶ 41–80, 103–13.

5. *Id.* at ¶¶ 114–18.

sions. The case is a purported class action brought by plaintiffs on behalf of themselves and all others similarly situated.

## II. *Analysis*

Plaintiffs argue that good cause exists for them to receive expedited discovery because such discovery will allow them to provide the court a complete evidentiary record in support of their anticipated motion for a preliminary injunction. Plaintiffs argue that allowing the Proposed Acquisition to go forward on its current terms will forever foreclose them, and the absent class members, from making an informed decision as to whether the Proposed Acquisition is fair. Defendants argue that plaintiffs' motion for expedited discovery lacks merit because plaintiffs' claims for violation of the Exchange Act and Rule 240.14a–9 promulgated thereunder are subject to the mandatory stay of discovery imposed by the Private Securities Litigation Reform Act or 1995 (PSLRA), 15 U.S.C. § 78u–4(b)(3)(B), and that even if the PSLRA does not operate to stay discovery, plaintiffs have neither shown a need for expedited discovery, nor demonstrated a sufficient possibility of irreparable harm to justify expedited discovery.

### A. Plaintiffs Have Not Satisfied the Standards for Expedited Discovery Applied in PSLRA Cases

Plaintiffs argue that the PSLRA's mandatory stay of discovery does not apply because the expedited discovery that they seek is particularized and necessary to prevent undue prejudice.[6]

1. *PSLRA's Mandatory Stay of Discovery*

■ The PSLRA states:

---

**6.** Plaintiffs' Reply in Support of Motion for Expedited Discovery Under Rule 26(d) of the Federal Rules of Civil Procedure (Plaintiffs' Reply), Docket Entry No. 25, pp. 7–10.

In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C. § 78u–4(b)(3)(B). Defendants filed a motion to dismiss on July 26, 2011, (Docket Entry No. 22), to which plaintiffs have not yet responded. The party seeking expedited discovery bears the burden of demonstrating that the PSLRA's mandatory stay should be lifted. *See In re Fannie Mae Securities Litigation,* 362 F.Supp.2d 37, 38 (D.D.C.2005).

2. *Plaintiffs' Expedited Discovery Requests Are Not Particularized*

■ A discovery request is "particularized" within the meaning of 15 U.S.C. § 78u–4(b)(3)(B) if the "party seeking discovery under the exception ... adequately specif[ies] the target of the requested discovery and the types of information needed." *In re Fannie Mae Securities Litigation,* 362 F.Supp.2d at 38 (quoting *In re Lernout & Hauspie Securities Litigation,* 214 F.Supp.2d 100, 108 (D.Mass.2002)). Whether a discovery request is sufficiently "particularized" depends on "the nature of the underlying litigation." *In re Royal Ahold N.V. Securities & ERISA Litigation,* 220 F.R.D. 246, 250 (D.Md.2004).

■ Plaintiffs argue that their discovery requests are "limited in scope, pertain only to the issues at the core of this litigation, and are exactly the type of documents commonly produced in cases like this one that challenge corporate transactions,"[7] but plaintiffs neither argue nor attempt to

---

**7.** Motion for Expedited Discovery, Docket Entry No. 3, p. 11.

show that their discovery requests are particularized. Instead, plaintiffs merely assert in a footnote to the reply that they filed in support of their motion that their "document and deposition requests are sufficiently particularized, as they go to the heart of Plaintiffs' claims regarding the materially misleading S–4 disseminated to Duncan Energy unitholders in connection with the Proposed Acquisition." [8]

Plaintiffs seek to depose three of the Individual Defendants (Fowler, Bulawa, and Snell), and one non-party witness, i.e., "[t]he person most knowledgeable concerning the Proposed Acquisition at Morgan Stanley," [9] without offering to limit the scope of the depositions. In addition, plaintiffs' seek a vast number of documents:

1. Duncan Energy's and/or DEP's draft and final Board and committee meeting minutes (with exhibits, handouts, attachments, and other materials reviewed at the meetings), insofar as the materials relate to the Proposed Acquisition (or any other offer or merger), employment agreements, stockholder agreements, the Voting Agreements, stock options, strategic alternatives, the potential acquisition of Duncan Energy by Enterprise, and/or any other acquisition or business combination between Duncan Energy and a possible acquirer thereof;

2. All materials given to or received from Morgan Stanley relating to the Proposed Acquisition or the potential acquisition or business combination between Duncan Energy and any other possible acquirer thereof, including, without limitation, projec-

tions of the Company's future financial performance;

3. Computer printouts summarizing the Duncan Energy and/or DEP executives' and directors' options exercised, options vested and unvested, option grant dates, option vesting schedules, and option prices, all as of the date the Court executes an order granting the limited expedited discovery;

4. Monthly and quarterly executive and/or director packages or any other document containing Duncan Energy's historical and/or projected operations and financial performance;

5. Any employment agreements, retention agreements, severance packages, and/or change-in-control agreements (and any amendments thereto) between any officer or director and Duncan Energy, DEP, Enterprise or any entity related to Enterprise;

6. All communication between Defendants, Morgan Stanley, Enterprise, and Enterprise affiliate, and/or any other entity expressing interest in acquiring Duncan Energy and all communications to or from Defendants concerning any voting agreements, employment agreements, and/or any potential acquisition of (or business combination with) Duncan Energy and another entity (subject to appropriate limitations on custodians and search terms); and

7. All documents and communications concerning Duncan Energy's retention of Morgan Stanley, including without limitation, documents concerning Morgan Stanley's prior relationships and dealings with Duncan Energy, Enterprise, and/or DEP.[10]

---

**8.** Plaintiffs' Reply, Docket Entry No. 25, p. 10 n. 12.

**9.** Motion for Expedited Discovery, Docket Entry No. 3, p. 14.

**10.** *Id.* at 13–14.

These discovery requests are neither limited nor particularized. Moreover, plaintiffs' reference to the use of "search terms" in document request number 6 indicates that plaintiffs are seeking extensive electronic discovery which, by its nature, would likely be burdensome for defendants to produce in the short time available before Duncan Energy unitholders are scheduled to vote on the Proposed Acquisition. *See Nichting v. DPL Inc.*, Civil Action No. 3:11–141, 2011 WL 2892945, *3 (S.D.Ohio July 15, 2011) ("The use of 'search terms' indicates that Plaintiff requests, *inter alia,* extensive electronic discovery, which, by its very nature, would likely be exceedingly burdensome.").

### 3. *Expedited Discovery is Not Needed to Prevent Undue Prejudice*

Asserting that district courts have construed "undue prejudice" as used in 15 U.S.C. § 78u–4(b)(3)(B) to mean improper or unfair treatment amounting to something less than irreparable harm, plaintiffs argue that absent expedited discovery they will be "prejudiced in their efforts to seek injunctive relief to cure the violations of sections 14(a) and 20(a) of the Securities Exchange Act ... and Rule 240.14a–9." [11] Plaintiffs assume that an alleged threat of irreparable harm to support a motion for preliminary injunction necessarily establishes a threat of irreparable harm for the purpose of expediting discovery. This assumption is not persuasive where plaintiffs claim, as they do here, that the proposed sales price and the defendants' disclosures are *facially* inadequate.

> For example, plaintiffs argue that Duncan Energy's S–4 filed on May 18, 2011, with the SEC recommends that Duncan Energy unitholders vote in favor of the Proposed Acquisition even though it omits and/or misrepresents material information concerning (i) the Company's financial forecasts; and (ii) the key inputs and assumptions underlying the fairness opinion provided by Morgan Stanley & Co. Incorporated ... the financial advisor to the Company's Audit, Conflicts and Governance Committee.[12]

Plaintiffs explain that the S–4 omits and/or misrepresents the following categories of allegedly material information concerning Morgan Stanley's analysis: (1) price targets analysis, specifically how Morgan Stanley arrived at a 10.0% cost of equity; (2) comparable partnership trading analysis, specifically the inputs and methodologies used to determine the cost of equity discount range of 10.0%; (3) discounted equity value analysis, including the actual long-term growth rates used to derive estimated distributions in 2014 and 2015, and the companies used to determine the "average" distribution coverage of 1.23x and their individually observed coverage ratios; (4) discounted cash flow analysis including the inputs and methodologies used to determine the cost of equity discount range of 9.0%–11.0%, and the reason why the selected growth rates of Duncan Energy are 1.0%–5.0% while those of Enterprise are 2.0%–5.0%; (5) precedent transactions analysis, including the actual premia and multiples reference ranges selected and applied; (6) pro forma accretion/dilution analysis, including the magnitude of the observed accretion/dilution for Duncan Energy and Enterprise for each year; and (7) the full financial forecasts provided for Duncan Energy and Enterprise, including distributable cash flow for years 2014–2015, distributions for years 2011–2015, FY +1 Earnings before Interest Taxes Depreciation and Amortization (EBITDA), and pro forma combined distributable cash

---

**11.** Plaintiffs' Reply, Docket Entry No. 25, pp. 1–2.

**12.** Motion for Expedited Discovery, Docket Entry No. 3, p. 6.

flow and distributions for years 2011–2015.[13] Missing from plaintiffs' briefing is any explanation of why, given this litany of deficiencies in the S–4, they need expedited discovery to support a motion for preliminary injunction.

Moreover, plaintiffs' argument that they will be prejudiced in their efforts to seek injunctive relief unless they are allowed to engage in expedited discovery before the court has decided whether they have satisfied the PSLRA's heightened pleading standard would eviscerate that heightened pleading standard. *See In re Odyssey Healthcare Inc.*, No. 04–cv–0844, 2005 WL 1539229, *2 (N.D.Tex. June 10, 2005) ("[I]t is the burden of any plaintiff seeking an exception to the stay to explain why, given the particular factual circumstances of the instant case, its litigation position would be materially harmed if discovery were delayed until after it had withstood a motion to dismiss."). As the court observed in *Odyssey Healthcare*, "[b]ecause the exception only covers 'undue prejudice,' this harm cannot consist of disadvantage that is inherent in the stay itself." *Id.*

Plaintiffs filed their complaint on July 5, 2011, and filed their motion for expedited discovery on July 12, 2011. Moreover, this is not the first action plaintiffs have filed challenging the Proposed Acquisition. Defendants have asserted—and plaintiffs have not disputed—that plaintiffs' first challenges to the Proposed Acquisition were filed on March 7 and 8, 2011, when they filed separate petitions in Texas state court asserting claims for breach of fiduciary duty. Other unitholders filed similar complaints in Delaware chancery court at the same time. Plaintiffs were appointed

lead plaintiffs in the Texas action, and on May 11, 2011, they filed a consolidated petition. On May 31, 2011, defendants responded to the consolidated petition with a plea to the jurisdiction, answer, and a motion to stay the Texas proceedings in favor of the Delaware proceedings. On June 6, 2011, plaintiffs filed an amended consolidated petition and a motion for expedited discovery. On June 20, 2011, defendants responded to the motion for expedited discovery. A hearing on plaintiffs' motion for expedited discovery and on defendants' motion to stay was set for June 24, 2011. On the eve of that hearing plaintiffs' nonsuited their Texas case.[14] Any alleged prejudice imposed by the PSLRA's mandatory stay of discovery is inherent in the plaintiffs' choice to nonsuit their Texas state case and file this action seeking relief on claims governed by the PSLRA. Accordingly, the court concludes that plaintiffs have not made an adequate showing that they will suffer undue prejudice if the broad-based discovery they seek is delayed until after the court rules on the defendants' motion to dismiss as required by the PSLRA.

Because the plaintiffs' discovery requests are neither limited nor particularized, and because plaintiffs have failed to show that expedited discovery is needed to prevent undue prejudice, plaintiffs have not persuaded the court that the PSLRA's mandatory stay of discovery should be lifted. Although these conclusions require the court to deny plaintiffs' motion for expedited discovery, for the reasons explained below, plaintiffs' motion would be denied even if their claims were not subject to PSLRA's mandatory stay.

---

13. *Id.* at 6–7.

14. Defendants' Opposition to Plaintiffs' Motion for Expedited Discovery Under Rule 26(d) of the Federal Rules of Civil Procedure (Defendants' Opposition), Docket Entry No. 20, p. 10.

## B. Plaintiffs Have Not Satisfied Standards for Expedited Discovery Applied in Non–PSLRA Cases

Citing Federal Rule of Civil Procedure 26, plaintiffs argue that they have "good cause for limited expedited discovery, as it will allow them to provide the Court with a complete evidentiary record in support of their anticipated motion for a preliminary injunction, and because the merger will likely close long before the conclusion of pretrial discovery conducted at its normal pace." [15] Asserting that Federal Rule of Civil Procedure 26(d) prohibits parties from seeking discovery before they have conferred under Rule 26(f), defendants argue that plaintiffs are not entitled to expedited discovery because plaintiffs cannot satisfy either of the two standards that courts generally use to decide if expedited discovery is warranted. [16]

### 1. Standards of Review

Federal Rule of Civil Procedure 26(d) states that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except ... when authorized under these rules, by stipulation, or by court order." Fed.R.Civ.P. 26(d). The Fifth Circuit has not yet articulated a standard for courts to apply when asked to expedite discovery in non-PSLRA cases. Quoting *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y.1982), defendants urge the court to apply a preliminary injunction style analysis that requires parties seeking expedited discovery to show, *inter alia*, irreparable injury and

some probability of success. [17] Without disputing their inability to satisfy the *Notaro* standard, plaintiffs cite *St. Louis Group v. Metals and Additives Corp., Inc.*, 275 F.R.D. 236, 240 (S.D.Tex.2011), in support of their argument that courts in this circuit generally require no more than a showing of good cause to expedite discovery. [18] Then, quoting *Energy Production Corp. v. Northfield Insurance Co.*, Civil Action No. 10–0933, 2010 WL 3184232, *3 (E.D.La. August 6, 2010), plaintiffs argue that "[g]ood cause exists 'where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.'" [19]

### 2. Plaintiffs' Have Not Shown a Threat of Irreparable Injury

Asserting that "district courts engaging in good cause analysis routinely grant expedited discovery 'when there is some showing of irreparable harm that can be addressed by limited, expedited discovery,'" [20] plaintiffs argue that they "have made a showing of irreparable harm that can be addressed by such discovery." [21] Citing *ODS Technologies, L.P. v. Marshall*, 832 A.2d 1254, 1262 (Del.Ch.2003), for its statement that "[t]he threat of an uninformed stockholder vote constitutes irreparable harm," and *In re Pure Resources, Inc., Shareholders Litigation*, 808 A.2d 421, 452 (Del.Ch.2002), for its statement that "irreparable injury is threatened when a stockholder might make a tender or voting decision on the basis of material-

---

**15.** Motion for Expedited Discovery, Docket Entry No. 3, p. 1 *See also* Plaintiffs' Reply, Docket Entry No. 25, pp. 3–7 (arguing that they have established good cause).

**16.** Defendants' Opposition, Docket Entry No. 20, pp. 12–22.

**17.** *Id.* at 13.

**18.** Plaintiffs' Reply, Docket Entry No. 25, pp. 3–5. *See also* Motion for Expedited Discovery, Docket Entry No. 3, p. 8.

**19.** Motion for Expedited Discovery, Docket Entry No. 3, p. 8.

**20.** Plaintiffs' Reply, Docket Entry No. 20, p. 5.

**21.** *Id.*

ly misleading or inadequate information," [22] plaintiffs argue that they and "the other unitholders of Duncan Energy face an immediate threat of irreparable injury as they are being asked to vote on—and have been mailed a recommendation to vote in favor of—an unfair transaction without all material information." [23] These cases are unpersuasive and inapposite because they both concerned the question of whether or not irreparable harm had been established for the purpose of granting a preliminary injunction to halt a corporate merger. Neither case involved the question of whether irreparable harm was threatened by a party's inability to receive expedited discovery in order to file a motion for preliminary injunction.

■ Citing *In re Netsmart Technologies, Inc. Shareholders Litigation*, 924 A.2d 171 (Del.Ch.2007), defendants argue that plaintiffs are unable to show they are threatened with irreparable injury because their breach of contract claims can be remedied with monetary damages.[24] Observing that Delaware courts have "typically found a threat of irreparable injury to exist when it appears stockholders may make an important voting decision on inadequate disclosures," *id.* at 207 (citing *ODS Technologies*, 832 A.2d at 1262, and *In re Pure Resources*, 808 A.2d at 452), the court in *Netsmart* distinguished between cases where the refusal to grant an injunction presented the possibility that a higher, pending, rival offer might go away forever, and cases where, as here, no rival bid is on the table. In the latter case, the court stated that Delaware courts have often found it imprudent to "enjoin the only deal on the table, when the stockholders can make that decision for themselves." *Id.* at 208. As the *Netsmart* court observed

[w]hen another higher bid has been made, an injunction against the target board's chosen deal has the effect of insuring a fair auction in which the highest bidder will prevail, at comparatively little risk to target stockholders. Indeed, in most circumstances, this means that the chances for a later damages proceeding are greatly minimized given the competition between rival bidders.

By contrast, when this Court is asked to enjoin a transaction and another higher-priced alternative is not immediately available, it has been appropriately modest about playing games with other people's money.

*Id.* Given that there is no rival offer in this case, no *per se* threat of irreparable harm exists. As plaintiffs' complaint demonstrates, the ultimate question to be decided in this action is the per unit value of Duncan Energy, a determination that is not likely to be more speculative after the sale than before the sale. Thus, the court is not persuaded that plaintiffs will not have an adequate remedy at law even if the Proposed Acquisition is ultimately approved at a price they later prove to be inadequate. *See Giammargo v. Snapple Beverage Corp.*, 1994 WL 672698 at *3 (Del.Ch.1994) (money damages are "completely sufficient, if plaintiffs are correct in their claim"); *Wand Equity Portfolio II L.P. v. AMFM Internet Holding, Inc.*, 2001 WL 167720 at *3 (Del.Ch.2001) (denying plaintiff's motion for expedited proceedings because "an award of money damages could fully and adequately compensate the plaintiffs for any injury they might suffer"). Accordingly, the court concludes that plaintiffs have failed to show threat of irreparable injury if they do not receive expedited discovery.

---

22. *Id.* at 6.

23. *Id.* at 5.

24. Defendants' Opposition, Docket Entry No. 20, p. 22.

### 3. Plaintiffs Have Not Shown a Need for Expedited Discovery that Outweighs Prejudice to Defendants

 Finally, the court is not persuaded that plaintiffs have shown a need for expedited discovery that outweighs prejudice to the defendants. Plaintiffs have known about the Proposed Acquisition since late February, have been pursuing claims against the defendants since March, and voluntarily nonsuited their Texas state court action in June shortly before a hearing was to be held on their pending motion for expedited discovery. As explained in § II.A.2, above, the court has concluded that the so-called "limited" discovery plaintiffs seek is neither limited nor particularized but, instead, vast and potentially burdensome, and as explained in §§ II.A.3 and II.B.2, above, the court is not persuaded that the plaintiffs will suffer undue prejudice or threat of irreparable injury if their expedited discovery requests are not granted. For these reasons the court concludes that plaintiffs' need for expedited discovery does not outweigh prejudice defendants will suffer if they are required to respond to plaintiffs' discovery requests before the court has ruled on defendants' motion to dismiss.

### III. Conclusions and Order

For the reasons explained above, the court concludes that plaintiffs have not established good cause for expedited discovery. Accordingly, plaintiffs' Motion for Expedited Discovery Under Rule 26(d) of the Federal Rules of Civil Procedure, Docket Entry No. 3, is **DENIED**. Because the court has been able to resolve the plaintiffs' motion for expedited discovery without a hearing, plaintiff's Motion for Expedited Hearing on Plaintiffs' Motion for Expedited Discovery Under Rule 26(d) of the Federal Rules of Civil Procedure, Docket Entry No. 4, is **MOOT**.